# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-1747

_____

James L. Dean; Lois P. White, as Personal Representative of the Estate of Joseph White, deceased; Kathleen A. Gonzalez; Thomas W. Winslow; Ada Joann Taylor; Debra Sheldon

*Plaintiff - Appellant*

v.

County of Gage, Nebraska, a Nebraska political subdivision; Burdette Searcey, Dep., in his official and individual capacities; Wayne R. Price, PhD., in his official and individual capacities; Ryan L. Timmerman, Personal Representative of the Estate of Jerry O. DeWitt

*Defendants - Appellees*

Richard T. Smith, in his official and individual capacities; Gerald Lamkin, Dep., in his official and individual capacities; Gage County Attorney's Office, a Nebraska political subdivision; Gage County Sheriff's Office, a Nebraska political subdivision

*Defendants*

_____

No. 14-1773

_____

James L. Dean; Lois P. White, as Personal Representative of the Estate of Joseph White, deceased; Kathleen A. Gonzalez; Thomas W. Winslow; Ada Joann Taylor; Debra Sheldon

*Plaintiffs - Appellees*

v.

County of Gage, Nebraska, a Nebraska political subdivision

*Defendant*

Burdette Searcey, Dep., in his official and individual capacities; Wayne R. Price, PhD., in his official and individual capacities; Ryan L. Timmerman, Personal Representative of the Estate of Jerry O. DeWitt

*Defendants - Appellants*

Richard T. Smith, in his official and individual capacities; Gerald Lamkin, Dep., in his official and individual capacities; Gage County Attorney's Office, a Nebraska political subdivision; Gage County Sheriff's Office, a Nebraska political subdivision

*Defendant*s

_____

Appeals from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 13, 2015
Filed: August 31, 2015

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

DNA evidence exonerated Joseph E. White and the five other plaintiffs of rape and murder. They sued Gage County and the officers involved in their case. After an appeal from summary judgment and a mistrial on remand, the district court dismissed plaintiffs' conspiracy claim and all claims against Gage County. The

district court denied qualified immunity to the officers. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands the dismissal, and affirms the denial of qualified immunity.

I.

In 1989, Joseph White was convicted for the rape and murder of Helen Wilson. The prosecution used testimony and confessions from White's co-defendants—Ada JoAnn Taylor, Thomas W. Winslow, James L. Dean, Kathleen A. Gonzalez, and Debra Shelden—all of whom pled guilty to related charges. After DNA testing in 2008, all convictions were pardoned or overturned. Plaintiffs individually filed 42 U.S.C. §§ 1983 and 1985 claims against Gage County, sheriff Jerry O. DeWitt (and his employees Dr. Wayne R. Price and Burdette Searcey), and county attorney Richard T. Smith, alleging Fifth and Fourteenth Amendment due process violations. Plaintiffs claimed officers led a reckless investigation, manufactured false evidence, conspired to manufacture evidence, and coerced testimony. On two earlier appeals from separate summary judgments, this court determined: "evidence is sufficient to support Plaintiffs' claims that their rights to fair criminal proceedings were violated as the result of a reckless investigation and Defendants' manufacturing of false evidence"; evidence was sufficient to support a conspiracy claim; evidence was not sufficient to support a coercion claim; members of the sheriff's office were not protected by qualified immunity; and the county attorney was protected by absolute immunity. *Winslow v. Smith*, 696 F.3d 716, 721, 740 (8th Cir. 2012) (reversing summary judgment on qualified immunity and reinstating claims against Gage County, affirming dismissal of coercion claim, and affirming dismissal of claims against county attorney Smith based on absolute prosecutorial immunity); *White v. Smith*, 696 F.3d 740, 743 (8th Cir. 2012) (affirming denial of qualified immunity, holding sufficient evidence existed to support conspiracy claim).

Trial of the consolidated claims began January 6, 2014. At the close of plaintiffs' evidence, the district court granted the Gage County and the officers' Rule 50(a)(1) motion, dismissing the conspiracy claim against all parties and all claims against Gage County. It denied the officers' Rule 50(a)(2) motion for qualified immunity on the remaining claims of manufacturing evidence and conducting a reckless investigation. After three days of jury deliberation with no verdict, the district court declared a mistrial and ordered a new trial. One month later, the district court certified its Rule 50(a)(1) order under Rule 54(b) to authorize an appeal. It also denied the officers' renewed motion for qualified immunity, which they cross-appeal.

## II.

The officers claim they are entitled to qualified immunity. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

This court reviews the district court's denial of a motion for judgment as a matter of law de novo, "using the same standards as the district court." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 816-17 (8th Cir. 2012) (reviewing denial of Rule 50(b) motion for qualified immunity). This court "must draw all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence." *Phillips v. Collings*, 256 F.3d 843, 847 (8th Cir. 2001) (reviewing denial of Rule 50(b) motion for qualified immunity).

To overcome qualified immunity, plaintiffs must demonstrate both that "(1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation." *Parker v. Chard*, 777 F.3d 977,

980 (8th Cir. 2015). Since this court previously denied qualified immunity for the officers as a matter of law, the district court should not consider a Rule 50 motion on qualified immunity unless substantially different evidence was produced at trial. *See, e.g.*, *Kerman v. City of New York*, 374 F.3d 93, 110 (2d Cir. 2004) (applying law-of-the-case doctrine in appeal from Rule 50 qualified immunity decision); *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000) (same). *See generally Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1441 (8th Cir. 1986) ("[W]e will reconsider a previously decided issue only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice.").

The officers argue that the evidence introduced at trial varies greatly from that identified at summary judgment. Resolving the appeal from summary judgment, this court previously stated, "Another troubling piece of evidence is that Price offered to serve as Dean's therapist without initially informing Dean of his role as a law enforcement officer. Price then told Dean that his polygraph results indicated he was repressing memories of the crime." *White*, 696 F.3d at 755. The officers claim, at trial, they showed this was untrue. However, the record the officers cite shows only that Price had previously told Dean's attorney that he was a psychologist for the state and his conversations with Dean would not be confidential. Price met with Dean in his role as "deputy sheriff." Price told Dean he was a police psychologist but never explained his role to Dean or informed Dean that he was not acting as his psychologist. After meeting with Dean several times, Price told Dean that he "failed" his polygraph test and recommended therapy. Price recorded his belief that Dean was present at the crime scene and was repressing memory. This slight variance does not alleviate this court's previous concerns or overcome the vast amount of troubling evidence presented at trial.

The officers also claim that "the testimony by the attorneys who represented Dean, Shelden, and Taylor all indicated that they were never informed by their clients

that the officers were doing anything that would amount to coercion or that they were being mistreated by the officers." This court previously affirmed the dismissal of the coercion claim, and the claim is not at issue in this appeal. *See **Winslow***, 696 F.3d at 738. The trial testimony does not support the officers' entitlement to qualified immunity. The district court correctly denied the renewed Rule 50 motion for qualified immunity.

III.

A.

Before addressing the conspiracy claim and claims against Gage County, this court is obligated to independently consider its jurisdiction. ***Outdoor Cent., Inc. v. GreatLodge.com, Inc.***, 643 F.3d 1115, 1118 (8th Cir. 2011). It is a general rule that only orders that dispose of all claims are final and appealable. ***Williams v. Cnty. of Dakota, Neb.***, 687 F.3d 1064, 1067 (8th Cir. 2012).

"Rule 54(b) creates a well-established exception to this rule by allowing a district court to enter a final judgment on some but not all of the claims in a lawsuit." ***Id.*** Rule 54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

-6-

A district court considering Rule 54(b) certification "must first determine that it is dealing with a 'final judgment'" that disposes of a claim. ***Curtiss-Wright Corp. v. Gen. Elec. Co.***, 446 U.S. 1, 7 (1980). Second, "[i]n determining that there is no just reason for delay, the district court must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals." ***Williams***, 687 F.3d at 1067 (alteration in original), *quoting **Curtiss-Wright***, 446 U.S. at 7.

Interlocutory appeals are "generally disfavored" and "only the special case . . . warrants an immediate appeal from a partial resolution of the lawsuit." ***Clark v. Baka***, 593 F.3d 712, 714-15 (8th Cir. 2010) (per curiam). *See **Hayden v. McDonald***, 719 F.2d 266, 269 (8th Cir. 1983) (per curiam) (listing relevant factors in reviewing Rule 54(b) certifications). This court must "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." ***Curtiss-Wright***, 446 U.S. at 10; ***Outdoor Cent.***, 643 F.3d at 1119. Where each claim "requires familiarity with the same nucleus of facts and involves analysis of similar legal issues, the claims should be resolved in a single appeal." ***Outdoor Cent.***, 643 F.3d at 1119; ***Hayden***, 719 F.2d at 270 (discouraging certification when claims deal "with essentially one set of facts, with which this court would need to refamiliarize itself on subsequent appeals"). *See generally **Spiegel v. Trustees of Tufts Coll.***, 843 F.2d 38, 45 (1st Cir. 1988) ("A similarity of either legal or factual issues (or both) militates strongly against invocation of Rule 54(b)." (citing ***Solomon v. Aetna Life Ins. Co.***, 782 F.2d 58, 62 (6th Cir. 1986) *and **Morrison-Knudsen Co. v. Archer***, 655 F.2d 962, 965 (9th Cir. 1981))).

If these judicial concerns are met, this court gives the district court's weighing of equities substantial deference, reviewing the certification for an abuse of discretion. ***Williams***, 687 F.3d at 1068 (holding the district court is "most likely to be familiar with the case and with any justifiable reasons for delay"). This court's

role "is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtiss-Wright*, 446 U.S. at 10 ("The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable."). *See Williams*, 687 F.3d at 1067 ("Certification should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.").

As for the first determination, the district court's order dismissing the conspiracy claim and all claims against Gage County was final.

As for the second determination, the district court, considering "equities of the situation and judicial administrative interests," ruled it was "preferable" to allow plaintiffs to appeal after the mistrial instead of after a second trial because the record is "fully developed . . . and the issues are fairly limited in scope," involving questions of law (whether plaintiffs waived their conspiracy claim and whether officers were "policy makers"). The district court properly reasoned that an appeal from the dismissal of the conspiracy claim was likely, and that an appeal from the county's dismissal was a "near certainty."

The mistrial created the special case for an immediate appeal. This litigation has already generated three interlocutory appeals, including this one. The district court recognized "the large trial record and the complexity and difficulty of this case." Delaying the appeal until the close of another trial will add to this case's complexity by requiring consideration of two separate, fully developed records, and may require yet another trial if the appeal were successful.

The certified issues on appeal are "self-contained" and an "appellate ruling will finally resolve the sufficiency" of the claims. *See Outdoor Cent.*, 643 F.3d at 1120. Rule 54(b) certification is appropriate.

B.

This court reviews "de novo the grant or denial of a motion for judgment as a matter of law, using the same standards as the trial court." **Shaw Hofstra & Assocs. v. Ladco Dev., Inc.**, 673 F.3d 819, 825 (8th Cir. 2012). Reviewing the sufficiency of the evidence, this court draws "all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence." **Id.** A Rule 50(a) motion is proper only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." **Fed. R. Civ. P. 50(a)(1)**; **Moran v. Clarke**, 296 F.3d 638, 643 (8th Cir. 2002) ("Such a ruling is appropriate only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.").

1.

Plaintiffs challenge the district court's dismissal of their conspiracy claim. The district court held that plaintiffs "failed to preserve [their conspiracy] claim in the final pretrial conference order" and that the evidence at trial was insufficient "to prove the essential elements of a conspiracy claim." After a thorough review of the record, this court disagrees.

True, "[t]he issues identified in the Pretrial Order supersede any issues raised in the Complaint and Amended Complaint." **Hartman v. Workman**, 476 F.3d 633, 634 n.3 (8th Cir. 2007). However, the district court heard the case on remand, after this court held that "a factfinder could determine that White's conviction was the result of a purposeful conspiracy by Defendants to fabricate evidence." **White**, 696 F.3d at 757. (The other plaintiffs' conspiracy claims were not at issue in prior appeals, although their claims arise from the same facts.) Affirming the denial of summary judgment on conspiracy, this court preserved the claim for trial. The district court's initial pretrial order and its reframing of issues on remand are nearly identical.

-9-

They both include as a controverted issue whether "Defendants, or any one of them, manufactured false evidence against a named Plaintiff." The district court did not say that its reframing of issues excluded the previously pled conspiracy claim. Plaintiffs continued to argue the conspiracy issue in trial, proffering evidence (arguing hearsay testimony was made in furtherance of a conspiracy) and submitting proposed jury instructions on the conspiracy claim. They did not waive their conspiracy claim. The district court improperly held that the claim was waived on remand.

"To prove a civil conspiracy under § 1983, [plaintiffs] must show (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360-61 (8th Cir. 2012). "To be liable as a conspirator [one] must be a voluntary participant in a common venture. . . . It is enough if [Defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." *White*, 696 F.3d at 757, *quoting Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988) (alterations and ellipsis in original).

The evidence in support of conspiracy, viewed in favor of plaintiffs, is substantial. At trial, plaintiffs submitted evidence that defendants: were unable to match the blood and semen found at the crime scene; suggested to Dean, Shelden, and Gonzalez that they had repressed their memory of the rape and murder; conducted polygraphs, hypnosis, and recommended recall therapy to recover these blocked memories; conducted unrecorded and unreported interrogations; disregarded inconsistencies during interrogations; submitted affidavits without disclosing contradictions to evidence at the crime scene; and ignored verifiable alibis. Both sheriff DeWitt and county attorney Smith testified that they communicated frequently and worked together during investigation up to plaintiffs' convictions.

Plaintiffs "produced proof of questionable procedures" and "hasty condemnation" by officers in charge of policymaking. *See Moran*, 296 F.3d at 647-48 (8th Cir. 2002) (reversing grant of Rule 50(a) motion on conspiracy claim, holding police department "publicly and financially committed itself to producing a culprit for an alleged wrongdoing before any such wrongdoing was actually established"). Neither the district court nor the officers point to substantially different evidence presented at trial that would alter this court's previous finding on conspiracy. *See Little Earth of the United Tribes, Inc.*, 807 F.2d at 1441; *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 911 (8th Cir. 2005) (holding law of the case "does not deprive the district court of the ability to reconsider earlier rulings to avoid reversal"). There was a sufficient evidentiary basis for a jury to find for plaintiffs on their conspiracy claim. This court again concludes that "the facts viewed in the light most favorable to White [and plaintiffs] give rise to the reasonable inference that Defendants acted in concert with the goal of securing" plaintiffs' convictions. *See White*, 696 F.3d at 757. The district court erred in dismissing the conspiracy claim.

2.

Plaintiffs challenge the district court's dismissal of their official-capacity claims against Gage County. They argue that sheriff DeWitt and county attorney Smith "were the final decisionmakers and sole policymakers for their respective elected county offices," and "their conduct in those specific areas is fairly attributed to Gage County." Because this court previously affirmed for absolute immunity county attorney Smith, it need not consider whether the County is liable for his actions. *See Winslow*, 696 F.3d at 739.

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S.

469, 481, 483 (1986) (plurality opinion) ("If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."); *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (holding municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels"). *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."); *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992) ("An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business.").

This court must determine as a matter of law whether sheriff DeWitt was a final policymaker for Gage County. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Two key sources used are "(1) 'state and local positive law' and (2) state and local 'custom or usage' having the force of law." *Id.*, 709 F.3d at 1215, *quoting Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). The district court found DeWitt was not a policymaker for Gage County, because under Nebraska law, county sheriffs act pursuant to state-enacted restrictions.

As to positive law, Nebraska statutes "foster and promote local control of local affairs. Highest ranking in this hierarchy of local matters is the supervision of law enforcement. The state provides a system of law enforcement and local officers to carry out the functions thereof on a day-to-day basis within such system." **Neb. Rev. Stat. § 23-2801**. County sheriffs have broad authority to make policy about criminal investigations and enforcement of Nebraska's criminal code, which includes gathering evidence and conducting interrogations. *See* **§ 23-1704.01** ("The sheriff may appoint such number of deputies as he or she sees fit for whose acts he or she

-12-

will be responsible."); **§ 23-1710** ("It shall be the duty of the sheriff by himself or deputy to preserve the peace in his county, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed in his county, and present the same to the county attorney and the grand jury . . . ."); **§ 29-401** (empowering deputy sheriffs to "arrest and detain any person found violating any law of this state"); **§ 81-2006** (Nebraska state patrol officers must cooperate with local officers). The sheriff is elected by the voters of Gage County. **§ 32-520**. The board of commissioners sets salaries for the position before each election, but the statutes give them no supervisory power over the sheriff. **§ 23-1114**. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 791 (1997) ("The county's payment of the sheriff's salary does not translate into control over him, since the county neither has the authority to change his salary nor the discretion to refuse payment completely."). The officers do not identify a statute giving any entity supervisory authority over the sheriff, and Nebraska law does not require a sheriff to answer to any superior. *See Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997) (considering meaningful administrative review in the ability to make policy). Positive law provides both positions with decisionmaking authority.

As to custom and usage, the officers offered testimony that sheriff DeWitt was the policymaker for the department without any higher supervision. The officers testified that DeWitt was "the one" who made policy and that "he was his own boss." DeWitt, in his course of conduct, gave orders to his employees and decided how to run investigations. During the investigation here, when a city police officer indicated that they did not "have the right people," DeWitt dismissed him from the case.

Evidence at trial supports that sheriff DeWitt created policies for the collection of evidence, investigation, and interrogation throughout the process of the case. He supervised other officers, and specifically directed, endorsed, and encouraged their activities. The district court erred in finding that sheriff DeWitt was not a final policymaker for the County and in dismissing all claims against the County. Whether

these policy decisions resulted in a violation of constitutional rights is a question for the jury in the second trial.

* * * * * * *

The order dismissing the conspiracy claim and all claims against Gage County is reversed, and the case remanded for further proceedings consistent with this opinion. The order denying qualified immunity is affirmed.

_____