# SUPREME COURT OF THE UNITED STATES

## JEREMY CARROLL *v.* ANDREW CARMAN, ET UX.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 14–212.　Decided November 10, 2014

PER CURIAM.

On July 3, 2009, the Pennsylvania State Police Department received a report that a man named Michael Zita had stolen a car and two loaded handguns. The report also said that Zita might have fled to the home of Andrew and Karen Carman. The department sent Officers Jeremy Carroll and Brian Roberts to the Carmans' home to investigate. Neither officer had been to the home before. 749 F. 3d 192, 195 (CA3 2014).

The officers arrived in separate patrol cars around 2:30 p.m. The Carmans' house sat on a corner lot—the front of the house faced a main street while the left (as viewed from the front) faced a side street. The officers initially drove to the front of the house, but after discovering that parking was not available there, turned right onto the side street. As they did so, they saw several cars parked side-by-side in a gravel parking area on the left side of the Carmans' property. The officers parked in the "first available spot," at "the far rear of the property." *Ibid.* (quoting Tr. 70 (Apr. 8, 2013)).

The officers exited their patrol cars. As they looked toward the house, the officers saw a small structure (either a carport or a shed) with its door open and a light on. *Id.,* at 71. Thinking someone might be inside, Officer Carroll walked over, "poked [his] head" in, and said "Pennsylvania State Police." 749 F. 3d, at 195 (quoting Tr. 71 (Apr. 8, 2013); alteration in original). No one was there, however, so the officers continued walking toward the house. As they approached, they saw a sliding glass

door that opened onto a ground-level deck. Carroll thought the sliding glass door "looked like a customary entryway," so he and Officer Roberts decided to knock on it. 749 F. 3d, at 195 (quoting Tr. 83 (Apr. 8, 2013)).

As the officers stepped onto the deck, a man came out of the house and "belligerent[ly] and aggressively approached" them. 749 F. 3d, at 195. The officers identified themselves, explained they were looking for Michael Zita, and asked the man for his name. The man refused to answer. Instead, he turned away from the officers and appeared to reach for his waist. *Id.,* at 195–196. Carroll grabbed the man's right arm to make sure he was not reaching for a weapon. The man twisted away from Carroll, lost his balance, and fell into the yard. *Id.,* at 196.

At that point, a woman came out of the house and asked what was happening. The officers again explained that they were looking for Zita. The woman then identified herself as Karen Carman, identified the man as her husband, Andrew Carman, and told the officers that Zita was not there. In response, the officers asked for permission to search the house for Zita. Karen Carman consented, and everyone went inside. *Ibid.*

The officers searched the house, but did not find Zita. They then left. The Carmans were not charged with any crimes. *Ibid.*

The Carmans later sued Officer Carroll in Federal District Court under 42 U. S. C. §1983. Among other things, they alleged that Carroll unlawfully entered their property in violation of the Fourth Amendment when he went into their backyard and onto their deck without a warrant. 749 F. 3d, at 196.

At trial, Carroll argued that his entry was lawful under the "knock and talk" exception to the warrant requirement. That exception, he contended, allows officers to knock on someone's door, so long as they stay "on those portions of [the] property that the general public is al-

lowed to go on." Tr. 7 (Apr. 8, 2013). The Carmans responded that a normal visitor would have gone to their front door, rather than into their backyard or onto their deck. Thus, they argued, the "knock and talk" exception did not apply.

At the close of Carroll's case in chief, the parties each moved for judgment as a matter of law. The District Court denied both motions, and sent the case to a jury. As relevant here, the District Court instructed the jury that the "knock and talk" exception "allows officers without a warrant to knock on a resident's door or otherwise approach the residence seeking to speak to the inhabitants, just as any private citizen might." *Id.*, at 24 (Apr. 10, 2013). The District Court further explained that "officers should restrict their movements to walkways, driveways, porches and places where visitors could be expected to go." *Ibid.* The jury then returned a verdict for Carroll.

The Carmans appealed, and the Court of Appeals for the Third Circuit reversed in relevant part. The court held that Officer Carroll violated the Fourth Amendment as a matter of law because the "knock and talk" exception "requires that police officers begin their encounter at the front door, where they have an implied invitation to go." 749 F. 3d, at 199. The court also held that Carroll was not entitled to qualified immunity because his actions violated clearly established law. *Ibid.* The court therefore reversed the District Court and held that the Carmans were entitled to judgment as a matter of law.

Carroll petitioned for certiorari. We grant the petition and reverse the Third Circuit's determination that Carroll was not entitled to qualified immunity.

A government official sued under §1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. See *Ashcroft* v. *al-Kidd*, 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 3). A right is clearly

established only if its contours are sufficiently clear that "a reasonable official would understand that what he is doing violates that right." *Anderson* v. *Creighton*, 483 U. S. 635, 640 (1987). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U. S., at ___ (slip op., at 9). This doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.,* at ___ (slip op., at 12) (quoting *Malley* v. *Briggs*, 475 U. S. 335, 341 (1986)).

Here the Third Circuit cited only a single case to support its decision that Carroll was not entitled to qualified immunity—*Estate of Smith* v. *Marasco*, 318 F. 3d 497 (CA3 2003). Assuming for the sake of argument that a controlling circuit precedent could constitute clearly established federal law in these circumstances, see *Reichle* v. *Howards*, 566 U. S. ___, ___ (2012) (slip op., at 7), *Marasco* does not clearly establish that Carroll violated the Carmans' Fourth Amendment rights.

In *Marasco*, two police officers went to Robert Smith's house and knocked on the front door. When Smith did not respond, the officers went into the backyard, and at least one entered the garage. 318 F. 3d, at 519. The court acknowledged that the officers' "entry into the curtilage after not receiving an answer at the front door might be reasonable." *Id.,* at 520. It held, however, that the District Court had not made the factual findings needed to decide that issue. *Id.,* at 521. For example, the Third Circuit noted that the record "did not discuss the layout of the property or the position of the officers on that property," and that "there [was] no indication of whether the officers followed a path or other apparently open route that would be suggestive of reasonableness." *Ibid.* The court therefore remanded the case for further proceedings.

In concluding that Officer Carroll violated clearly estab-

lished law in this case, the Third Circuit relied exclusively on *Marasco*'s statement that "entry into the curtilage after not receiving an answer at the front door might be reasonable." *Id.,* at 520; see 749 F. 3d, at 199 (quoting *Marasco, supra,* at 520). In the court's view, that statement clearly established that a "knock and talk" must begin at the front door. But that conclusion does not follow. *Marasco* held that an unsuccessful "knock and talk" at the front door does not automatically allow officers to go onto other parts of the property. It did not hold, however, that knocking on the front door is *required* before officers go onto other parts of the property that are open to visitors. Thus, *Marasco* simply did not answer the question whether a "knock and talk" must begin at the front door when visitors may also go to the back door. Indeed, the house at issue seems not to have even had a back door, let alone one that visitors could use. 318 F. 3d, at 521.

Moreover, *Marasco* expressly stated that "there [was] no indication of whether the officers followed a path or other apparently open route that would be suggestive of reasonableness." *Ibid.* That makes *Marasco* wholly different from this case, where the jury necessarily decided that Carroll "restrict[ed] [his] movements to walkways, driveways, porches and places where visitors could be expected to go." Tr. 24 (Apr. 10, 2013).

To the extent that *Marasco* says anything about this case, it arguably supports Carroll's view. In *Marasco*, the Third Circuit noted that "[o]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." 318 F. 3d, at 519. The court also said that, "'when the police come on to private property . . . and restrict their movements to places visitors could be expected to go (*e.g.*, walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment.'" *Ibid.* (quoting 1 W. LaFave,

Search and Seizure §2.3(f) (3d ed. 1996 and Supp. 2003) (footnotes omitted)). Had Carroll read those statements before going to the Carmans' house, he may have concluded— quite reasonably—that he was allowed to knock on any door that was open to visitors.*

The Third Circuit's decision is even more perplexing in comparison to the decisions of other federal and state courts, which have rejected the rule the Third Circuit adopted here. For example, in *United States* v. *Titemore*, 437 F. 3d 251 (CA2 2006), a police officer approached a house that had two doors. The first was a traditional door that opened onto a driveway; the second was a sliding glass door that opened onto a small porch. The officer chose to knock on the latter. *Id.*, at 253–254. On appeal, the defendant argued that the officer had unlawfully entered his property without a warrant in violation of the Fourth Amendment. *Id.,* at 255–256. But the Second Circuit rejected that argument. As the court explained, the sliding glass door was "a primary entrance visible to and used by the public." *Id.,* at 259. Thus, "[b]ecause [the officer] approached a principal entrance to the home using a route that other visitors could be expected to take," the court held that he did not violate the Fourth Amendment. *Id.,* at 252.

The Seventh Circuit's decision in *United States* v. *James*, 40 F. 3d 850 (1994), vacated on other grounds, 516 U. S. 1022 (1995), provides another example. There, police

———————

*In a footnote, the Court of Appeals "recognize[d] that there may be some instances in which the front door is not *the* entrance used by visitors," but noted that "this is not one such instance." 749 F. 3d 192, 198, n. 6 (2014) (emphasis added). This footnote still reflects the Third Circuit's view that the "knock and talk" exception is available for only one entrance to a dwelling, "which in most circumstances is the front door." *Id.,* at 198. Cf. *United States* v. *Perea-Rey*, 680 F. 3d 1179, 1188 (CA9 2012) ("Officers conducting a knock and talk . . . need not approach only a specific door if there are multiple doors accessible to the public.").

officers approached a duplex with multiple entrances. Bypassing the front door, the officers "used a paved walkway along the side of the duplex leading to the rear side door." 40 F. 3d, at 862. On appeal, the defendant argued that the officers violated his Fourth Amendment rights when they went to the rear side door. The Seventh Circuit rejected that argument, explaining that the rear side door was "accessible to the general public" and "was commonly used for entering the duplex from the nearby alley." *Ibid.* In situations "where the back door of a residence is readily accessible to the general public," the court held, "the Fourth Amendment is not implicated when police officers approach that door in the reasonable belief that it is a principal means of access to the dwelling." *Ibid.* See also, *e.g., United States* v. *Garcia*, 997 F. 2d 1273, 1279–1280 (CA9 1993) ("If the front and back of a residence are readily accessible from a public place, like the driveway and parking area here, the Fourth Amendment is not implicated when officers go to the back door reasonably believing it is used as a principal entrance to the dwelling"); *State* v. *Domicz*, 188 N. J. 285, 302, 907 A. 2d 395, 405 (2006) ("when a law enforcement officer walks to a front or back door for the purpose of making contact with a resident and reasonably believes that the door is used by visitors, he is not unconstitutionally trespassing on to the property").

We do not decide today whether those cases were correctly decided or whether a police officer may conduct a "knock and talk" at any entrance that is open to visitors rather than only the front door. "But whether or not the constitutional rule applied by the court below was correct, it was not 'beyond debate.'" *Stanton* v. *Sims*, 571 U. S. \_\_\_, \_\_\_ (2013) (*per curiam*) (slip op., at 8) (quoting *al-Kidd*, 563 U. S., at \_\_\_ (slip op., at 9)). The Third Circuit therefore erred when it held that Carroll was not entitled to qualified immunity.

The petition for certiorari is granted. The judgment of

Per Curiam

the United States Court of Appeals for the Third Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*