# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-1593

_____

Alexys Sherry Parker

*Plaintiff - Appellee*

v.

Officer Adam Chard; Officer Robert Illetschko, in their individual and official capacities

*Defendants - Appellants*

City of Minneapolis

*Defendant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 13, 2014
Filed: January 29, 2015

_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Alexys Sherry Parker sued Officers Adam Chard and Robert Illetschko and the City of Minneapolis under 42 U.S.C. § 1983 and state law for alleged civil rights violations. The district court denied the officers qualified immunity on one § 1983

claim, finding that they violated the Fourth Amendment by seizing Parker without reasonable suspicion. The officers appeal. Having jurisdiction over orders denying qualified immunity and related grants of summary judgment, *see Sherbrooke v. City of Pelican Rapids*, 513 F.3d 809, 813 (8th Cir. 2008), this court reverses and remands.

I.

On October 26, 2011, Chard and Illetschko were dispatched to investigate shoplifting allegations in Uptown Minneapolis. Before leaving the police station, they were informed that a "couple of black females" had reportedly stolen merchandise from Urban Outfitters, and that an employee from the nearby Heartbreaker store had called to report suspected shoplifters. Driving to Uptown, Illetschko called Heartbreaker. The manager said that a customer had approached another Heartbreaker employee and pointed out several African American females inside the store. The customer claimed to have seen them running out of Victoria's Secret. Illetschko called Victoria's Secret. An employee there confirmed that a "group of black females" had "very recently" run out of the store, but could not confirm whether any merchandise was stolen.

When the officers arrived at Heartbreaker, the manager pointed to Parker and her two friends as the African American females identified by the customer. The manager reported that the customer thought that the group's running from Victoria's Secret was suspicious and indicated shoplifting. The customer did not leave a name or contact (and apparently left Heartbreaker before the officers arrived). The manager did not suspect Parker or her friends of stealing from Heartbreaker. The officers observed Parker and her friends inside Heartbreaker and as they left the store. The officers noted no suspicious activity and did not believe they had stolen from Heartbreaker.

Illetschko followed Parker and her friends on foot while Chard got the squad car. Parker and her friends began to leave in Parker's car. Chard pulled his squad car in front of Parker's car and turned on the emergency lights at about 5:34 p.m. Chard,

approaching the car, asked if they had been to Victoria's Secret. Parker and her friends said they had not. Chard told them that the officers had received a report from someone who believed they had shoplifted at Victoria's Secret. Illetschko also approached the car. Parker consented to a search of her shopping bags, which were visible in the car. Searching the bags, Chard believed everything was in order and nothing appeared stolen. He asked Parker for her driver's license and ran it inside his squad car at about 5:39 p.m. Returning Parker's license, Chard told her she was free to leave. Parker requested he speak to her father on her cell phone. Parker first relayed questions to Chard and ultimately handed him the phone. This conversation lasted about five to ten minutes. The officers then went to Victoria's Secret to review the security video and continue the shoplifting investigation.

## II.

This court reviews de novo the denial of qualified immunity on summary judgment. *Meehan v. Thompson*, 763 F.3d 936, 940 (8th Cir. 2014). Qualified immunity shields public officials performing discretionary functions from liability for conduct that "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.*, *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (internal quotation marks omitted). To overcome qualified immunity, a plaintiff must demonstrate that (1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation. *Meehan*, 763 F.3d at 940.

Parker asserts that the officers violated her rights by seizing her without reasonable suspicion, based only on an unreliable and uncorroborated anonymous tip. *See* **U.S. Const. amend. IV** (prohibiting unreasonable search and seizure by government officials); *Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding brief

investigatory stop is permissible if supported by reasonable suspicion).  The officers do not dispute they seized Parker, but argue she cannot overcome qualified immunity.

Even assuming that the officers violated Parker's Fourth Amendment rights by seizing her without reasonable suspicion, the issue remains whether those rights were clearly established at the time of the seizure.  *See* ***Pearson v. Callahan***, 555 U.S. 223, 236 (2009) (noting courts may address either qualified immunity prong first).  "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" ***Meehan***, 763 F.3d at 940 (alteration in original), *quoting* ***Anderson v. Creighton***, 483 U.S. 635, 640 (1987).  *See also* ***Malley v. Briggs***, 475 U.S. 335, 341 (1986) ("[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized.").  Clearly established law is not defined "at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." ***Plumhoff v. Rickard***, 134 S. Ct. 2012, 2023 (2014) (internal quotation marks and citation omitted).  It is unnecessary to have "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." ***al-Kidd***, 131 S. Ct. at 2083.

Officers may conduct an investigatory *Terry* stop when, based on the totality of the circumstances, they have "a particularized and objective basis for suspecting the particular person stopped of criminal activity." ***United States v. Cortez***, 449 U.S. 411, 417-18 (1981).  For an anonymous tip to give rise to such suspicion, it must be "suitably corroborated" and exhibit "'sufficient indicia of reliability.'" ***Florida v. J.L.***, 529 U.S. 266, 270 (2000), *quoting* ***Alabama v. White***, 496 U.S. 325, 327 (1990).  To demonstrate the reliability of tipsters alleging possession of concealed drugs or guns, *J.L.* and *White* require corroboration of the tips' predictive elements.  *Compare* ***J.L.***, 529 U.S. at 271-72 (finding no reasonable suspicion when police corroborated only the tipster's description of suspect's visual attributes and location, noting tipster "neither explained how he knew about the gun nor supplied any basis for believing he had inside information" of concealed criminal activity), *with* ***White***, 496 U.S. at 332 (finding reasonable suspicion after police corroborated multiple predictive elements

of tip, indicating tipster's inside knowledge about defendant).  The Court did not hold that corroboration of predictive elements is the exclusive measure of a tip's reliability.  *See* ***United States v. Wheat***, 278 F.3d 722, 731, 732 & n.8, 734 (8th Cir. 2001) (noting *J.L.* and *White* "did not create a rule *requiring* that a tip predict future action" and setting lower standard of corroboration for tips alleging drunk or erratic driving).

In this case, the anonymous customer claimed to eyewitness a group of African American females running out of a store.  Unlike the tip in *White*, this tip does not contain any predictive elements that the police could use to test the tipster's reliability.  However, the basis of the customer's knowledge here—firsthand observation of readily visible activity—is clear.  The customer does not need inside information to observe suspicious running.  *White*, focusing on allegations of concealed drug possession, does not address the reliability of this type of eyewitness tip.

*J.L.*, too, does not discuss eyewitness tips.  In *J.L.*, the officers had only "the bare report of an unknown, unaccountable informant" that someone had a concealed weapon.  ***J.L.***, 529 U.S. at 271.  For those circumstances, *J.L.*, like *White*, addresses whether the tipster had inside information about the defendant or the concealed criminal activity.  *See* ***id.*** at 271-72.  Here, the tipster's basis of knowledge was not inside information but rather the observation of visible activity.  And Chard and Illetschko had another reason to credit the anonymous tip.  Unlike the officers in *J.L.*, they corroborated the part of the tip alleging suspicious activity—that is, they confirmed with Victoria's Secret that a group of black females had recently run out of the store.  True, this corroboration was minimal:  The officers did not corroborate anything but gender and race, or any illegal activity.  But the officers confirmed more than "a subject's readily observable location and appearance."  ***Id.*** at 272.

Parker points to this court's *Wheat* case addressing the reliability of eyewitness tips, but the tip here does not report drunk driving or a situation of imminent danger.  ***Wheat***, 278 F.3d at 729, 732 & n.8.  *See generally* ***Carroll v. Carman***, 135 S. Ct. 348, 350 (2014) (assuming circuit precedent may clearly establish law).  Additionally, *Wheat*—like *White* and *J.L.*—addresses only a stand-alone tip.  These cases do not

clearly establish how to balance anonymous tips with other circumstances: for example, here, the officers' awareness of a recent, nearby shoplifting by individuals matching the race and gender of Parker and her friends, and their knowledge of shoplifting tactics, compared with their personal observation that Parker was not acting suspiciously.

In a decision after the seizure here, the Supreme Court in *Navarette* analyzes indicia of reliability for eyewitness tips. ***Navarette v. California***, 134 S. Ct. 1683, 1688, 1689-90, 1692 (2014) ("As in [*White*], the indicia of the 911 caller's reliability here are stronger than those in *J.L.*, where we held that a bare-bones tip was unreliable. Although the indicia present here are different from those we found sufficient in *White*, there is more than one way to demonstrate [reasonable suspicion]." (internal citation omitted)). *Navarette*, however, cannot clearly establish the law for this case. *See* ***Shekleton v. Eichenberger***, 677 F.3d 361, 366 (8th Cir. 2012) ("When determining whether an action was a clearly established constitutional violation, we look to the state of the law at the time of the incident.").

Based on *White* and *J.L.*, it was not clearly established that Chard and Illetschko—having corroborated the running asserted in the eyewitness tip, and knowing shoplifting recently occurred—could not reasonably suspect Parker of shoplifting. "[W]hether or not the constitutional rule applied by the court below was correct, it was not beyond debate." ***Carroll***, 135 S. Ct. at 352 (internal quotation marks omitted). The officers are entitled to qualified immunity.[1]

---

[1]Given this court's assumption that Parker's seizure was unconstitutional, it is unnecessary to address her contention that, if the initial seizure were constitutional, the officers unlawfully exceeded the scope of the *Terry* stop by briefly checking her identification after concluding she was innocent of shoplifting. *See* ***Great Atl. Ins. Co. v. Liberty Mut. Ins. Co.***, 773 F.2d 976, 981 (8th Cir. 1985) (noting it is unnecessary to address argument in the alternative in light of disposition of other issue). Parker does not argue—and cites no authority that clearly establishes—that a request for identification during an unlawful detention should be treated as an independent Fourth Amendment violation.

-6-

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for further proceedings consistent with this opinion.

_____