JONES, Circuit Judge, joined by SMITH, CLEMENT and OWEN,
dissenting:
Qualified immunity protects “all but the plainly incompetent or those who knowingly violate the law.” Malley v. Briggs, 475 *498 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Too often recently, panels of this court have strayed from the Supreme Court’s longstanding reaffirmation of this principle in order to pursue their independent vision of sound policy or just to “let a jury decide” if a public official’s conduct has gone too far. See, e.g., Luna v. Mullenix, 777 F.3d 221 (5th Cir.2014) (Jolly, J., dissenting from denial of rehearing en banc). But an official’s negligence and mistakes of judgment are shielded not only from liability but also the cost and humiliation of lawsuits. Ashcroft v. al-Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (Qualified immunity “gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.”) Thus, “[qjualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was ‘clearly established’ at the time of the challenged conduct.” al-Kidd, 131 S.Ct. at 2080. The law must be so clear that “every reasonable officer” would have known that what he is accused of doing is a violation. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The panel here articulated a new, rigid Fourth Amendment rule in order to measure the materiality of the fact issue, which it then failed to apply at the proper level of generality to Officer Wade’s actions. The panel’s ruling, in effect, says to law enforcement officers that if they pursue a fleeing suspect into a home where other people may be present, the officers must knock before entry or be sued. Because this holding is most mischievous in cases where the public safety is at risk, we should have reconsidered it en banc.
In this case, Officer Wade chased “a kid on an ATV,”[1] who had fled a traffic stop, across an open field in the deep of night to a house Wade knew was the Trents’ home. The suspect dismounted his ATV and ran into the house. There is no evidence to indicate that Wade knew the young man was the Trents’ son until some point after he had entered their home. The Trents do not dispute that fleeing arrest is a felony offense. The officer had chased the “kid” at some personal risk across the unpaved field and believed this unknown person could have posed a danger to the occupants of the house. The officer reasonably called for backup assistance.
Under the Fourth Amendment, officers must ordinarily knock and announce their presence and authority before entering a private residence. Wilson v. Arkansas, 514 U.S. 927, 934, 115 S.Ct. 1914, 1918, 131 L.Ed.2d 976 (1995). Had the suspect lived in the house alone, however, the officer’s hot pursuit into the entryway would have been clearly constitutional. United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300 (1976) (holding that warrantless arrests remain proper even after a suspect escapes from a public place into a private place); Wilson v. Arkansas, 514 U.S. at 936, 115 S.Ct. at 1919 (recognizing that the common law already allowed officers to dispense with announcement when the individual escapes from custody into his dwelling). An unannounced entry into an individual’s home is justified if the police reasonably suspect that, under the circumstances, knocking and announcing their presence would (1) be dangerous or futile, or (2) inhibit effective investigation of the crime. Richards *499 v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997).
The panel opinion first concludes, after four pages of analysis, that the futility justification for a warrantless entry is necessarily limited. According to the panel, the knock and announce rule “contemplates that all of the occupants of a home possess the same constitutional rights ... to be free from no-knock entries.... ‘Futility’ therefore justifies a no-knock entry only when the officer has a reasonable suspicion that the occupants of the residence to be searched are already aware of the officer’s presence.” 776 F.3d at 381 (first emphasis added; second emphasis in original). Consequently, the panel holds that “[a]ny reasonable officer would understand that, because the knoek-and-an-nounce rule serves to alert the occupants of a home of an impending lawful intrusion, the futility justification requires reasonable suspicion that the occupants of the home to be searched are already aware of the officer’s presence.” 776 F.3d 368, 383 (5th Cir.2015) (emphasis added).
The upshot of this holding, practically speaking, is to require an officer who is pursuing a felony suspect to evaluate, on the spot, whether the dwelling could accommodate other inhabitants at that time and whether all of those people must be warned by shout or knock before the officer attempts to enter. The public safety consequences of this holding for the hapless officer and the residential occupants seem obviously adverse. Buried in a footnote, the panel seems to worry that “[f]or example, when an armed and dangerous suspect flees into his house in a hot pursuit, stopping to knock and announce might be a dangerous course of action for the officer.” 776 F.3d at 382 n. 11. But the corresponding text of the opinion, at odds with this footnote, allows for no latitude in the officer’s judgment: “Hot pursuit ... does not have any bearing on the constitutionality of the manner in which [the officer] enters the home.” Id. To be sure, a man’s home is his castle vis a vis unannounced official intrusion, but just as surely, the “greatest intrusion, that of the fleeing felon into the home, already has occurred.” Ingram v. City of Columbus, 185 F.3d 579, 599 (6th Cir.1999)(Kennedy, J., dissenting).[2]
Contrary to the panel’s novel and rigid rule — allowing a no-knock entry into a private home only if a police officer, while in hot pursuit of a fleeing suspect, has “reasonable suspicion” that “all” its occupants are already aware of his presence — the Supreme Court has never so held. Instead, as in other Fourth Amendment cases, the Court’s decisions emphasize the fact-specific balancing that determines the reasonableness of police no-knock entries. See, e.g., Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997). Only two circuit court cases actually discuss the rights of “all occupants” in similar circumstances, and they reach conflicting conclusions. Compare United States v. Peterson, 353 F.3d 1045, 1049 (9th Cir.2003) (holding that futility as to only one occupant — not even the suspect — was sufficient to dispense with the knock-and-announce requirement), with Ingram, 185 F.3d at 591. (rejecting a per *500 se “hot pursuit” exception to the knock- and-announce rule based on the Fourth Amendment interests of non-suspect occupants). Not one of the other cases cited by the panel articulates an “all occupants” rule; all those cases do is use the plural of “occupant” when describing background facts or general principles. See, e.g., United States v. Seelig, 498 F.2d 109, 114 (5th Cir.1974) (two suspects were “occupants;” no discussion of “all occupants” requirement); United States v. Dice, 200 F.3d 978 (6th Cir.2000) (no mention of failure to announce entry to others in a house); Green v. Butler, 420 F.3d 689 (7th Cir.2005) (no occupant, including the suspect, was aware of the police presence).
Not only does the panel opinion thus extend Fourth Amendment law by creating an “all occupants” rule, it fails to apply the rule at the level of fact-specific generality required by qualified immunity analysis for determining whether the law was “clearly established.” The Supreme Court has “repeatedly told courts ... not to define clearly established law at a high level of generality.” Ashcroft v. al-Kidd, 131 S.Ct. at 2084. The point of this part of the inquiry is to determine whether the law’s application to the same or quite similar circumstances to those faced by a particular official was clear. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987) (using a high level of generality “destroy[s] the balance that [the] cases strike between the interests in vindication of citizens’ constitutional rights and in public officials’ effective performance of their duties”). Here, the panel’s recitation of knock-and-announce rulings, under the first prong of qualified immunity analysis, “revealed” that an officer must have a reasonable suspicion of futility as to all occupants before making a no-knock entry in pursuit of a fleeing suspect. This holding was the “law” that should have been “clearly established” for purposes of the second prong. Under the second prong of qualified immunity analysis, however, the panel asked only whether the “knock-and-announce rule and the justifications for dispensing with ‘it [are] beyond debate.” Trent v. Wade, 776 F.3d at 368, 383 (5th Cir.2015). The panel’s question was posed at a significantly more general level than the rule it had just announced. As I have shown, the law was far from being clearly established at the fact-tailored level of generality.
The disconnect between the panel’s Fourth Amendment ruling and the level of generality for immunity purposes mirrors the error pointed out by the Supreme Court in Wilson v. Layne, 526 U.S. 603, 605, 119 S.Ct. 1692, 1695, 143 L.Ed.2d 818 (1999). There, the Court held that officers violated the plaintiffs rights by bringing a media crew to observe the execution of a search warrant in the plaintiffs’ home. The Court also decided, however, that although prior eases and legal authorities supported its holding, this rule was not “clearly established” under the second prong of qualified immunity analysis. The Court upheld the grant of qualified immunity. Id. at 618, 119 S.Ct. 1692 (“If judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.”). The correct level of generality, the Court held, was whether it was clearly established that the invitation to the media exceeded the scope of the search warrant.
More recently, the Court, in a per cu-riam opinion, overturned a denial of immunity where the circuit court held that officers should have attempted to “knock and talk” to the occupants of a home by approaching the front door rather than a side door. Carroll v. Carman, — U.S.-, 135 S.Ct. 348, 352, 190 L.Ed.2d 311 (2014). In Carroll, the Supreme Court used a level *501 of generality that matched the rule that had been applied to the officers’ conduct: whether the law “clearly established that a ‘knock and talk’ must begin at the' front door.” Id. at 351. The Court did not, as the panel did here, apply the broadest level of generality by asking whether the warrant requirement itself was clearly established. After framing the level of generality, the Court cited lower court cases that had come to differing conclusions -on this issue. Then, without deciding “whether a police officer may conduct a ‘knock and talk’ at any entrance that is open to visitors rather than only the front door,” the Court concluded that “whether or not the constitutional rule applied by the court below was correct, it was not beyond debate.” Id. (quoting Stanton v. Sims, — U.S.-, 134 S.Ct. 3, 7, 187 L.Ed.2d 341 (2013) (per curiam)) (internal quotations and citations omitted). The denial of qualified immunity was therefore erroneous.
The panel here has its own vision of what the Fourth Amendment demands, and even though novel, it is not necessarily a flawed vision. But in deciding to “let a jury decide” whether Officer Wade violated “clearly established” law, the panel, in my view, clearly erred. Can it really be said that Officer Wade was “plainly incompetent” or “knowingly violating] the law,” Malley, 475 U.S. at 341, 106 S.Ct. 1092, because he failed to anticipate this panel’s holding? Put otherwise, should he go to trial and perhaps pay money damages on account of the panel’s new knoek-or-be-sued rule? I respectfully dissent.

. The Trents' brief admits only that the officer was familiar with Roger Trent, the father, and Randal, another son.

. To be clear, I do not assert that an officer may always make a warrantless entry of a home while in pursuit of a fleeing felon. All of the facts and circumstances must be considered. Here, however, the officer was chasing an unknown suspect who had been racing on the highway late at night, failed to heed the command for a traffic stop, and took off across an open, unlit field in his ATV, all of which actions potentially endangered Officer Wade and others. It was not clearly constitutionally unreasonable for the officer to follow the suspect through the door of the house.