**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1878**

MARCELLA HOLLOMAN,

            Plaintiff - Appellant,

      v.

PAUL MARKOWSKI; GREGORY BRAGG,

            Defendants - Appellees,

      and

STEPHANIE RAWLINGS-BLAKE; BERNARD "JACK" YOUNG; JAMES B. KRAFT; BRANDON SCOTT; ROBERT CURRAN; BILL HENRY; ROCHELLE RIKKI SPECTOR; SHARON GREEN MIDDLETON; NICK MOSBY; HELEN HOLTON; WILLIAM "PETE" WELCH; EDWARD REISINGER; WILLIAM COLE; CARL STOKES; WARREN BRANCH; MARY PAT CLARKE; GREGG BERNSTEIN; ANTHONY BATTS,

            Defendants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, Chief District Judge. (1:14-cv-01516-CCB)

Argued: September 20, 2016                Decided: October 7, 2016

Before WILKINSON, MOTZ, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Stephen Louis Braga, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. Frederic Nelson Smalkin, Jr., William Rowe Phelan, Jr., BALTIMORE CITY LAW DEPARTMENT, Baltimore, Maryland, for Appellees. **ON BRIEF**: Hardev Chhokar, Brian Remondino, Josh Robbins, Andrew Selman, Third Year Law Students, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant. George Nilson, City Solicitor, BALTIMORE CITY LAW DEPARTMENT, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Marcella Holloman brought this 42 U.S.C. § 1983 action stemming from the fatal shooting of her son Maurice Donald Johnson by two officers of the Baltimore City Police Department. Holloman asserts a municipal liability claim against the Mayor and City Council of Baltimore, Maryland and individual liability claims against the two officers. The district court granted the City's motion to dismiss and the officers' motion for summary judgment. For the reasons that follow, we affirm in all respects.

I.

On the afternoon of May 19, 2012, Holloman hosted a birthday party for her granddaughter. During the party, Johnson, who had previously been diagnosed with bipolar disorder, came to Holloman's house, where he also lived.

Holloman first noticed that Johnson had returned when she heard the sound of breaking glass coming from Johnson's upstairs bedroom. Johnson then broke the forty-two-inch television and the mirror in his room. Holloman went upstairs to ask her son to stop, explaining that after the party ended she would take him to the hospital to receive psychiatric treatment. Johnson told her that she would have to get the police to take him to

3

the hospital because he would not go willingly. Holloman and her daughter decided to remove the children from the house.

Johnson continued to destroy property. He smashed Holloman's television and threw his mattress onto the front lawn, where he ripped it apart. While Johnson was outside, Holloman and her daughter locked him out of the house and Holloman called 911. In the process of trying to re-enter the house, Johnson kicked the front door and, announcing that he was "coming in," pulled the back screen door off its hinges.

At this point, Officer Paul Markowski arrived, followed shortly by Officer Gregory Bragg. Holloman told the officers that Johnson had psychiatric issues and would not stop his destructive behavior. She asked them not to shoot him, but suggested that they employ a Taser.

The officers opened the back door and asked Johnson to calm down. The officers attempted to restrain Johnson, at which point he lunged at them, pinned Officer Markowski to the ground with his knees, and fought with him. Officer Bragg tried, but failed, to pull Johnson off Officer Markowski. Holloman heard Officer Bragg fire at least two gun shots, wounding Johnson, who later died from his injuries. Holloman alleges that the entire altercation lasted at most one minute.

Holloman, proceeding pro se before the district court, brought this action against the City, numerous municipal

4

officials, and the individual officers. The district court entered judgment for all defendants. This appeal followed.

## II.

We first address the municipal liability claim. "We review de novo the grant of a motion to dismiss for failure to state a claim. In doing so, we accept as true the well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Harbourt v. PPE Casino Resorts Maryland, LLC, 820 F.3d 655, 658 (4th Cir. 2016) (internal citations omitted). "[W]hile a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Because Holloman was pro se before the district court, we construe her complaint liberally. See Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015).

In Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 690-91 (1978), the Supreme Court held that municipalities face liability under § 1983 if a municipal policy or custom itself causes a deprivation of constitutional rights. Holloman alleges that the City failed to supervise and train its

5

police officers to handle interactions with mentally ill individuals and "had a general policy, pattern and/or practice of not disciplining police officers for their conduct, thereby sanctioning the police officers' actions."

To prevail on a Monell claim, Holloman "must point to a 'persistent and widespread practice[] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Owens v. Baltimore City State's Attorney's Office, 767 F.3d 379, 402 (4th Cir. 2014) (quoting Spell v. McDaniel, 824 F.2d 1380, 1386-91 (4th Cir. 1987)) (alteration in Owens). While we can infer both knowledge and deliberate indifference "from the extent of employees' misconduct[, s]poradic or isolated violations of rights will not give rise to Monell liability; only widespread or flagrant violations will." Id. at 402-03 (internal citations and quotations omitted).

The only facts Holloman has pled in support of these allegations were four specific instances of city police officers killing in the course of their duties and an August 22, 2012 Baltimore Sun article reporting that, year-to-date, city police officers had shot ten individuals (eight fatally), "[a] number of [whom] had been diagnosed with some sort of mental illness."

6

Importantly, Holloman does not allege any facts showing that any of these incidents involved constitutional violations, let alone that the City improperly failed to discipline or train any officers. Cf. Owens, 767 F.3d at 403 (holding that a plaintiff alleging "the existence of 'reported and unreported cases' and numerous 'successful motions'" regarding the improper withholding of exculpatory evidence stated a Monell claim). Holloman's allegations are too speculative to state a plausible claim for municipal liability. We thus affirm without reaching the City's argument that the police department is a state, not city, agency.

III.

We next consider the claims against the two officers, whom Holloman alleges used excessive force in violation of the Fourth Amendment. We review the district court's grant of summary judgment to them de novo. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011). We analyze excessive force claims "under the Fourth Amendment's 'objective reasonableness' standard," Graham v. Connor, 490 U.S. 386, 388 (1989), and evaluate an officer's particular use of force "from the perspective of a reasonable officer on the scene," id. at 396. Three guiding factors in the reasonableness calculus are the severity of the relevant crime, the immediate threat the

7

suspect poses, and the intensity of the suspect's resistance to arrest. Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 899 (4th Cir. 2016).

"A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Carroll v. Carmon, 135 S. Ct. 348, 350 (2014). A plaintiff seeking to avoid an officer's qualified immunity defense must demonstrate both that (1) "the facts, viewed in the light most favorable to the plaintiff, show that the officer's conduct violated a federal right," and (2) this "right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015).

We exercise our discretion to begin with the second question--whether the asserted right was clearly established. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). "The dispositive question is whether the violative nature of particular conduct is clearly established . . . in light of the specific context of the case . . . ." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal citations and quotations omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional

question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Thus, here we must determine whether, as of May 19, 2012, relevant precedent established that an officer's use of lethal force is objectively unreasonable and therefore constitutionally excessive when used against an unarmed but physically resistant suspect, who has destroyed property, attacked an officer, and given no indication that he will yield. There is no such precedent.

Holloman conceded at oral argument that no case "anywhere" addresses similar facts. The relevant precedent most helpful for her, Clem v. Corbeau, 284 F.3d 543 (4th Cir. 2002), contains too many material distinctions to clearly establish that the officers acted unconstitutionally in the case at hand. In Clem, we denied summary judgment to an officer who allegedly "shot a mentally disabled, confused older man, obviously unarmed, who was stumbling toward the bathroom in his own house with pepper spray in his eyes, unable to threaten anyone." Id. at 552. Officers Markowski and Bragg faced markedly different circumstances.

Unlike Clem, Johnson engaged in a physical altercation with the two officers. Moreover, Holloman, Johnson's mother, had told the officers that Johnson had destroyed substantial property that evening and that he likely would not stop; no one

9

told the officers similar facts about Clem. Furthermore, despite having no weapon, Johnson had already dragged Officer Markowski to the ground, held him down, fought with him, and fended off Officer Bragg's effort to pull him away. Again, Clem engaged in no similar activity.

In sum, regrettable as Johnson's death is, under these circumstances neither <u>Clem</u> nor any other precedent established that the officers employed constitutionally excessive force.

IV.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.