**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-1686**

MARCUS BOUNDS,

Plaintiff - Appellant,

v.

DEPUTY BENJAMIN C. PARSONS, Individually and in his official capacity as Deputy with the Wicomico County Sheriff's Department; CORPORAL CRISTAN K. TAYLOR, Individually and in his official capacity as Corporal with the Wicomico County Sheriff's Department; OFFICER KEITH HEACOOK, Individually and in his official capacity as Officer with the Delmar Police Department; OFFICER TRAVIS DALLAM, Individually and in his official capacity as Officer with the Delmar Police Department,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Senior District Judge. (1:15-cv-01033-JFM)

Argued: March 24, 2017                    Decided: July 14, 2017

Before FLOYD and HARRIS, Circuit Judges, and John Preston BAILEY, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Luke Americus Rommel, ROMMEL & ASSOCIATES, Salisbury, Maryland, for Appellant. Kevin Bock Karpinski, KARPINSKI, COLARESI & KARP, PA,

Baltimore, Maryland, for Appellees. **ON BRIEF:** Jeffrey Bredeck, Megan G. Anderson, ECCLESTON & WOLF, PC, Hanover, Maryland, for Appellees Heacook and Dallam. Paul N. Rouhana, LAW OFFICE OF SEIGEL TULLY FURRER ROUHANA & TULLY, Towson, Maryland, for Appellee Heacook.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Marcus Bounds sued four police officers under § 1983, alleging that the officers used excessive force during his arrest. The district court granted the officers' motion for summary judgment. For the reasons that follow, we affirm.

**I.**

In the early morning of April 14, 2013, Benjamin C. Parsons, an officer with the Wicomico County Sheriff's Department in Maryland, responded to reports of a possibly intoxicated driver slumped over the wheel of a vehicle on the side of a highway. Parsons woke the driver – Marcus Bounds – and asked him to perform a field sobriety test. Bounds refused, even after Parsons warned him that he would be arrested if he did not take the test. Parsons then informed Bounds that he was under arrest and instructed him to turn around and place his hands behind his back.

At this point, the accounts of the parties diverge, at least in part. It is undisputed that after initially complying with Parsons's instructions, Bounds, with his hands out and not behind his back, tried to turn around. According to Bounds, he was attempting to assure Parsons, who was screaming at him, that he was not resisting arrest. According to Parsons, Bounds was "clearly intoxicated, . . . failing police commands, and [] resisting arrest," and posed a threat to Parsons's safety. J.A. 370. Parsons twice deployed his taser against Bounds and then placed Bounds in handcuffs.

As to the rest of the encounter, there is no testimony from Bounds, who was able to remember only "bits and pieces." J.A. 289. We do have the account of Parsons, along

3

with those of three officers who arrived on the scene as back-up: Christopher Taylor, Keith Heacook, and Travis Dallam. According to the officers, Bounds actively fought their efforts to secure him in the back of the police car, jerking back and forth and pushing his way out of the vehicle; was "very intoxicated [and] very disorderly"; and refused to obey any of their commands. J.A. 88–89. We also have video footage from a nearby security camera, which is generally consistent with the officers' accounts. During this stage of the encounter and before he finally was secured in the police car, Bounds was tased a third time and brought to the ground several times by the officers.

Bounds was tried and convicted under state law for driving while intoxicated and resisting arrest. With respect to the resisting arrest charge, the Maryland trial court, relying in part on the video evidence, specifically found that during the first part of his encounter with Parsons, Bounds turned and appeared to pull away from Parsons even after he was told that he was under arrest.

Bounds served his sentence on his state convictions and then brought this action in federal court under 42 U.S.C. § 1983, alleging that all four officers involved in his arrest used excessive force against him. In a brief memorandum opinion, the district court granted summary judgment to the officers. According to the district court, Bounds's version of events was refuted by the video tape evidence. Though the tape was "general in nature, having been taken some distance away from the occurrence," the district court concluded that it confirmed the officers' testimony. J.A. 420. Given the absence of a genuine dispute of material fact, the court held, the officers were entitled to summary judgment on Bounds's claim of excessive force.

4

This timely appeal followed.

## II.

We review the district court's grant of summary judgment de novo. *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 895 (4th Cir. 2016). In so doing, we view "the evidence and all reasonable inferences drawn therefrom" in the light most favorable to Bounds, the non-moving party. *Id.* at 895–96 (internal quotation marks omitted). Summary judgment is appropriate only if no material facts are disputed and the officers are entitled to judgment as a matter of law. *Id.*

It appears that the district court granted summary judgment to the officers on the merits of Bounds's claim, without reaching the officers' alternative argument that they are entitled to qualified immunity. But we may affirm on any ground that would support the district court's judgment, *Catawba Indian Tribe of S.C. v. City of Rock Hill, S.C.*, 501 F.3d 368, 372 n.4 (4th Cir. 2007), and we conclude that the officers are indeed entitled to qualified immunity.

"A government official sued under § 1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014). The first prong of the qualified immunity inquiry asks whether the officer's conduct actually violated a federal right; the second, whether that right was clearly established at the time of the violation, meaning that then-existing precedent was sufficiently clear that it put the statutory or constitutional question "beyond debate." *Smith v. Ray*, 781 F.3d 95, 100 (4th

5

Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see Armstrong*, 810 F.3d at 907. Here, we exercise our discretion to begin and end with the second question – whether the asserted right was "clearly established" at the time of Bounds's arrest. *See Smith*, 781 F.3d at 100 n.3; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As the district court acknowledged, the video tape of the occurrence, filmed at night and from a distance, is not of perfect quality, and it is not unambiguous in all respects. But taken together, the record evidence in the case puts beyond genuine dispute that Bounds, at a minimum, was physically resistant and noncompliant with officer instructions. And in 2013, when Bounds was arrested, relevant precedent did not clearly prohibit an officer from using force, including a taser, in order to effectuate an arrest of a suspect who physically resists. It was not until 2016, in *Armstrong*, that we made clear that a taser "may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk," and not "in the face of stationary and non-violent resistance to being handcuffed." 810 F.3d at 909–10. Nor does *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723 (4th Cir. 2013), decided before Bounds's arrest, clearly establish any limit on the use of force to restrain a suspect who is resisting: At the time excessive force was applied in *Meyers*, the suspect "was *not* actively resisting arrest," *id.* at 735 (emphasis added), whereas Bounds resisted arrest throughout, starting with his efforts to turn and face Parsons while being handcuffed and continuing through the officers' multiple efforts to secure Bounds in the police car.

To satisfy the "clearly established" prong of the qualified immunity inquiry, we do not require "a case directly on point." *Smith*, 781 F.3d at 100 (quoting *al-Kidd*, 563 U.S.

6

at 741). "[O]fficials can . . . be on notice that their conduct violates established law even in novel factual circumstances." *Armstrong*, 810 F.3d at 907 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "But they must, in fact, have notice in order to be held liable." *Id.* At the time of Bounds's arrest, neither *Meyers* nor any other precedent would have made clear to "every reasonable official," *see id.* (internal quotation marks omitted), that they were precluded from using force to effectuate the arrest of a physically resistant and noncompliant suspect. The officers are therefore entitled to qualified immunity.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*