[Cite as *State v. Davis*, 2017-Ohio-7572.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016CA00143 |
| JOSHUA B. DAVIS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
Court of Common Pleas, Case No.
2016CR0533C

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 11, 2017

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
BY RENEE M. WATSON
Assistant Prosecuting Attorney
110 Central Plaza S., Ste. 510
Canton, OH 44702

For Defendant-Appellant

BARRY T. WAKSER
Stark County Public Defender
201 Cleveland Ave. S.W., Ste, 104
Canton, OH 44702

*Gwin, P.J.*

{¶1} Defendant-appellant Joshua Brewer Davis ["Davis"] appeals the June 21, 2016 Judgment Entry entered by the Stark County Court of Common Pleas denying his motion to suppress. Plaintiff-appellee is the state of Ohio.

*Facts and Procedural History*

{¶2} On March 16, 2016, Officer John Koehler of the Uniontown Police Department responded to a disturbance call at 1349 Sugarbush Avenue. The call reported two irate females knocking on doors in the early morning hours, claiming to have been abducted, injected with drugs and possibly chased.

{¶3} Officer Koehler met the females outside the residence of the caller. The females were identified as Ashley Hutchison and Kayla Hill. Officer Koehler observed the women appeared to be under the influence of either drugs or alcohol. The females claimed to have been abducted by a man, identified as "Josh," who "shot them up" with something. They maintained they were being chased by a man with a flashlight, and feared they would be raped or killed. Neighbors also reported seeing a man with a flashlight.

{¶4} Officer Koehler asked the females to direct him to the house. The women pointed to the residence at 13425 Sugarbush Avenue Northwest. The women told the officers they had gone to the residence in the evening to hang out and play pool with Davis.[1] After ingesting the methamphetamine, the women stated they felt paranoid and suffered from a headache. Ashley Hutchison showered, and afterwards heard Kayla Hill and Davis arguing over a purse Hill found. The purse contained a gun, and Hill told Davis

---

[1] It was sometime later that the women told the officers that they voluntarily allowed Davis to inject them with methamphetamine. Supp. T. at 25-26.

the purse did not belong to her. The women further reported observing a shotgun inside the residence. Believing someone else was inside the house based upon the purse being found there and the shotgun, the women left carrying a knife with them.

{¶5} Chief Howard Britt of the Uniontown Police Department arrived on the scene. The officers together approached the front door of the residence and knocked numerous times. No answer was received. Davis's car was identified in the driveway. The officers then walked to the rear of the residence to attempt to make contact at a rear, sliding patio door. A light was on inside. The officers entered through a fenced in backyard, although they testified the gate was open.

{¶6} At the basement patio door, Officer Koehler again knocked, and received no answer. The patio sliding glass door was partially covered by a blanket. However, the officers could see the components of a meth lab inside. Officer Koehler noticed the door was unlocked and entered. Officer Koehler then observed Davis, unconscious on the couch.[2] Due to the nature of methamphetamine labs, the house was evacuated and the Stark County Metro Drug Unit and fire department arrived at the scene.

{¶7} Davis was indicted on one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A)(C)(3); illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A); aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(b); and possession of drug abuse instruments, in violation of R.C. 2925.12(A).

{¶8} On April 19, 2016, Davis filed a motion to suppress. The trial court conducted a suppression hearing on May 26, 2016.

---

[2] We note, the trial court's entry states Davis was found unconscious on the floor of the residence. We find the error of no legal significance to the issues raised.

{¶9} Via Judgment Entry of June 21, 2016, the trial court overruled the motion to suppress.

{¶10} Davis entered a plea of no contest to the charges. Via Judgment Entry of June 24, 2016, the trial court found Davis guilty on all counts and imposed sentence.[3]

*Assignment of Error*

{¶11} Davis presents one assignment of error for our consideration,

{¶12} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

*Law and Analysis*

{¶13} Davis' sole assignment of error challenges the trial court's overruling his motion to suppress. Specifically, Davis challenges the warrantless entry and subsequent seizure of evidence from the residence.

{¶14} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 20030-Ohio-5372 at ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 652 N.E.2d 988(1995); *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583(1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap, supra.* However, once an appellate court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,*

---

[3] Davis does not challenge the sentence imposed by the trial court on appeal.

*supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, also, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, *supra*. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, *supra* at 698, 116 S.Ct. at 1663.

{¶15} In the case at bar, it is beyond dispute that the officers could lawfully walk upon walkways, driveways, or access routes leading to the residence and attempt to speak with Davis, just as any other member of the public would or could do. "A presumption of unreasonableness attaches to all warrantless home entries." *State v. Young*, 2015-Ohio-1347, 31 N.E.3d 178, ¶ 17, *citing Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). However, "[w]hen law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 563 U.S. 452, 469, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011). A "knock and talk" by law enforcement is a "permissible warrantless intrusion" that does not require "any objective level of suspicion." *Young* at ¶ 24, *quoting Pritchard v. Hamilton Twp. Bd. of Trustees,* 424 Fed.Appx. 492, 499 (6th Cir. 2011). Accordingly, no Fourth Amendment violation occurred in this case when the officers approached the front door of Davis' residence and knocked in an attempt to speak with him.

{¶16} Where a legitimate law enforcement objective exists, a warrantless entry into the curtilage is not unreasonable under the Fourth Amendment, if the intrusion upon one's privacy is limited. *See United States v. Raines*, 243 F.3d 419, 421 (8th Cir. 2001).

For example, in *Raines*, the officer came to the defendant's residence to serve civil process on a person reasonably believed to be present, which the court characterized as a "legitimate objective." Id. After getting no response at the front door but seeing several cars in the driveway, the officer believed that the inhabitants might be in the back yard enjoying the summer evening, so the officer passed through an ungated, ten-foot-wide opening in a makeshift fence to enter the yard, which the court considered a limited intrusion. Id. at 420-21. Upon entry, the officer saw marijuana plants in plain view. Id. at 421. The seizure of the contraband was upheld because the officer was pursuing a legitimate law enforcement objective and made a limited intrusion upon the defendant's privacy interests. Id.

{¶17} As recently as 2014, the United States Supreme Court held that there is no clearly established Fourth Amendment violation if police officers conducting a knock and talk attempt to make contact by approaching the back or sides of a dwelling. *Carroll v. Carman,* __ U.S. __, 135 S.Ct. 348, 350–52, 190 L.Ed.2d 311 (2014). The Court held that officers who went through a person's yard and up to her back door in order to speak with a person did not violate clearly established law and thus were entitled to qualified immunity. Id. at 352.

{¶18} In *State v. Young,* the appellant argued that a Detective's presence on the back patio without a warrant or a legitimate basis for a warrantless search was a violation of the Fourth Amendment to the United States Constitution because the back patio was part of the home's curtilage. 12th Dist. Warren No. CA2014-05-74, 2015-Ohio-1347, ¶15. In *Young,* Detective Wetzel received an alert that Ashley had purchased pseudoephedrine at a Walgreens in Lebanon, Ohio. A week later, on September 25, the

detective received an alert that Ashley had unsuccessfully tried to purchase pseudoephedrine at a Kroger in Lebanon, Ohio. Minutes later, the detective received an alert that appellant had purchased pseudoephedrine at that Kroger. Believing that appellant and Ashley might try to manufacture methamphetamine that evening, Detective Wetzel and a police officer went to appellant's home to try to make contact with appellant and Ashley. Id. at ¶3. In finding that the Detective could go to the backdoor after knocking repeatedly on the front door to no avail, the Court reasoned,

As stated earlier, the testimony of the duplex property owner and photographs of the back patio show that *the back patio was completely enclosed by a six-foot sight-obscuring wooden fence* on September 25, 2013. The fence marked the back patio as a contiguous part of the home. *Ingress into the patio, other than through the back door of the home, was only possible by entering through the four-foot tall gate.* While not conclusive, "fencing configurations are important factors in defining the curtilage." *Dunn*, 480 U.S. at 301, 107 S.Ct. 1134, fn. 4.

\* \* \*

In the case at bar, we find that Detective Wetzel's entry onto the back patio to effectuate the knock and talk did not violate appellant's Fourth Amendment rights. Detective Wetzel testified he went to appellant's home on September 25, 2013, to make contact with appellant and his wife, talk to them, and gather evidence. The detective testified, "it looked like [appellant and his wife] were home" as the front window was "wide opened, unsecured" and "the T.V. was blaring really loud." After knocking on the

front door proved unsuccessful, and "[feeling] like somebody was home with the T.V. being on and the house being left open," the detective walked to the back of the house and onto the fenced back patio and knocked on the back door.

We agree with the trial court that it was reasonable for Detective Wetzel to conclude, upon seeing the window open and the television on, that appellant or possibly another occupant was home, and after unsuccessful attempts to summon the occupants of the house, to go around to the back of the home for the purpose of determining whether someone was home. In light of the foregoing circumstances, the knock and talk exception justified the detective's decision *to walk to the back door of the house and onto the fenced back patio.*

2015-Ohio-1347, ¶9; 20; ¶26-27(emphasis added). "[W]here knocking at the front door is unsuccessful in spite of indications that someone is in or around the house, an officer may take reasonable steps to speak with the person being sought out even where such steps require an intrusion into the curtilage." *Hardesty v. Hamburg Twp.*, 461 F.3d 646, 653 (6th Cir. 2006).

{¶19} In the case at bar, the officers were investigating a criminal complaint involving narcotics, weapons and a possible abduction. The women told the officers that they had fled the home because they were "in fear for their life that they was [sic.] going to be raped and/or killed." Supp. T. at 8. The officers were further informed that the women "were concerned that there is somebody else in the house besides Josh." Supp. T. 11. The officers were directed to the home. They knocked numerous times on the

front door with no response. The officers had reason to believe someone was at home based upon Davis' car in the driveway and the insistence by both women that Josh was still inside the home. (Supp. T. 12; 25). Further, neighbors corroborated that they had observed a person with a flashlight outside near the house. (T. at 7; 9; 35). Due to the hour, the officers may have reasonably believed that Davis had gone to bed. Officer Kohler testified that from the front of the home, he "could tell that there was a light around back that was on." (Supp. T. at 13).

{¶20} In her Judgment Entry overruling Davis' motion the trial judge noted,

Unlike those cases cited by defendant, this was not merely a "knock and talk" type of procedure without specific justification, but an ongoing and immediate investigation which prompted the need to make contact with the defendant, coupled with the development of a concern for his safety. Thus, the Court distinguishes the circumstances in the case at bar from those in which a backyard area was found to be included within the curtilage for purposes of Fourth Amendment protections.

*Judgment Entry Overruling Defendant's Motion to Suppress,* filed June 21, 2016 at n. 2. We agree with the trial court that it was reasonable and prudent to conclude that Davis or another person was home and after unsuccessful attempts to summon the occupants of the home to go around to the back of the home for the purpose of determining whether someone was home. We agree that the officers had a substantial, legitimate law enforcement objective that permitted intrusion into the curtilage.

{¶21} Additionally, the trial court found competent, credible evidence that the gate was unlocked and open at the time the officers approached on the walkway,

Although the defendant testified that he believed the gate would have been closed, the Court finds the testimony of Officer Koehler that the gate was open, coupled with the testimony of Chief Britt who did not recall even seeing a gate, to be credible and consistent with each other as well as consistent with the defendant's acknowledgement that he was unsure if the girls may have left the gate open when they fled. As such, the Court finds this walkway access to the patio to be significant.

Supp. T. at n. 1[4].

{¶22} In *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972(1992), the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. Id. at 366, 582 N.E.2d at 981-982. The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence.

{¶23} An appellate court's role in reviewing a trial court's ruling on a motion to suppress is not to re-evaluate the evidence or the credibility of the witnesses, but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate. *Mills*, 62 Ohio St.3d at 366, 582 N.E.2d 972; *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141(4th Dist. 1993).

---

[4]We note a scrivener's error in the trial court's opinion. Officer Koehler did not recall seeing a gate [Supp. T. at 19-20], while Chief Britt testified the gate was unlocked and open. [Supp. T. at 38-39]. We find the error of no legal significance to the issues raised.

{¶24} We hold that the evidence in this case adequately supports the trial court's finding that the gate was opened and unlocked and that the officers then proceed upon a walkway to the back door.

{¶25} In light of the forgoing circumstances, legitimate law-enforcement objectives permitted a limited intrusion on Davis' expectation of privacy.

{¶26} Once the officers observed a methamphetamine lab through the door, R.C. 2933.33 permitted warrantless entry. *See, State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904, ¶20 (9th Dist. 2008).

{¶27} The officers' conduct in the case a bar did not constitute an impermissible intrusion upon Davis' privacy in violation of the Fourth Amendment.

{¶28} Davis' sole assignment of error is overruled.

{¶29} The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, John, J., concur;

Hoffman, J., dissents

*Hoffman, J., dissenting*

I respectfully dissent from the majority opinion. While I concur the "knock and talk" on the front door of Appellant's residence was not a violation of the Fourth Amendment, I find the warrantless intrusion into the curtilage of the home violates the Fourth Amendment.

{¶30} I find the cases cited by the majority distinguishable from the instant case. In *United States v. Raines,* 243 F.3d 419, 421 (8th Cir. 2001), the curtilage was surrounded by a "makeshift fence of debris" with a ten foot opening. Because it was a pleasant summer evening and several cars were in the driveway, the officer thought it likely the occupants were in the backyard. *Id.* The officers in the instant case gave no indication they believed Appellant may be enjoying the evening in the backyard, nor were there cars other than Appellant's car in the driveway.

{¶31} *Carroll v. Carman,* __ U.S. __, 135 S. Ct. 348, 190 L.Ed.2d 311(2014) involved a question of an officer's qualified immunity from a homeowner's §1983 action. The officer testified the sliding glass door, which opened on to a deck, looked like a customary entry, and the jury necessarily found the officer restricted his movement to places where visitors could be expected to go. *Id.* at 349, 351. In the case at bar, the officers had no reasonable belief the sliding door in back of the house was used by visitors in approaching the home. The area was fenced in, near a pool, and under an upper deck with another sliding door, accessing the main living area of the home.

{¶32} In *State v. Young,* 12th Dist. Warren No. CA2014-05-74, 2015-Ohio-1347, a window was open and the television was blaring, and thus the court concluded the knock and talk exception justified the officer's decision to walk to the back door and onto

the fenced back patio. Similarly, in *Hardesty v. Hamburg Twp.*, 461 F.3d 646 (6th Cir. 2006), officers saw lights go off inside the house as they approached. In this case, the officers did not point to activity inside the house which led them to believe Appellant was inside.

**{¶33}** I find the evidence does not support a reasonable belief Appellant was inside the house sufficient to extend the "knock and talk" to the back sliding door, inside the fenced area. The neighbors reported to police they saw a flashlight coming *from* the house, but not specifically from *inside* the house. Tr. 9. The girls indicated Appellant was chasing them *outside* with a flashlight. `Tr. 35. Officers did not point to any signs from inside the residence that would lead them to believe Appellant was inside the house.

**{¶34}** Further, I do not find exigent circumstances for the entrance into the curtilage of the house. During his investigation and prior to entering the residence, Officer Koehler learned the women had voluntarily gone to the residence to hang out with Appellant. They consented to his injecting them with methamphetamine. Officer Koehler conceded the girls were not in any danger of imminent harm at the time the officers entered the residence. Tr. 26. He further conceded he was not given any information Appellant himself injected methamphetamine or overdosed from the injection of methamphetamine. *Id.* The women claimed to fear they would be raped or killed by Appellant, but were clearly no longer in danger upon the arrival of law enforcement.

**{¶35}** While the women stated they found a purse containing a gun inside the residence and a shotgun in one of the bedrooms, they did not observe another person in the residence, and did not claim to be in harm or afraid of another person. Rather, they claimed to be afraid of or in danger from Appellant alone. I would find the exigent

circumstances exception does not apply herein as the officers did not have reason to believe Appellant was in imminent danger or posed an imminent danger to another person.

{¶36} Accordingly, I would conclude the evidence is not admissible under the plain view exception as the officers were not lawfully on the premises at the time the evidence was in view. I would sustain the assignment of error and reverse the judgment of the trial court overruling Appellant's motion to suppress.