[Cite as *Ricksecker v. Ricksecker*, 2026-Ohio-716.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

BETHANY M. RICKSECKER
NKA BETHANY M. THOMPSON

    Plaintiff - Appellee

 -vs-

JOHN G. RICKSECKER

    Defendant – Appellant

Case No. 2025-COA-024

<u>Opinion And Judgment Entry</u>

Appeal from the Ashland County Court of Common Pleas, Domestic Relations Division,  Case No. 14-DIV-071

Judgment:   Affirmed

Date of Judgment Entry:March 2, 2026

**BEFORE:** ANDREW J. KING, P.J., WILLIAM B. HOFFMAN, J., & KEVIN W. POPHAM, J.; Appellate Judges

**APPEARANCES:** THOMAS T. MULLEN, for Plaintiff-Appellee; NINA M. NAJJAR, for Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}   John Ricksecker ("Father") appeals the August 13, 2025, judgment entry of the Ashland County Court of Common Pleas, Domestic Relations Division, overruling his objections to the magistrate's decision.  Appellee is Bethany Ricksecker nka Thompson ("Mother").  For the reasons below, we affirm.

*Facts & Procedural History*

{¶2}   Mother and Father have two children - L.R., born April 8, 2012, and M.R., born July 23, 2013.  The parties' divorce was finalized on November 19, 2015, by a Decree

of Divorce and Shared Parenting Plan. In June of 2022, Father notified the court of his intent to relocate to Colorado.

{¶3} In August of 2023, the magistrate issued an order – later adopted by the trial court on October 2, 2023 – awarding Father parenting time as follows: two consecutive weeks at the beginning of summer, two consecutive weeks at the end of summer, spring break every other year, and four days each year during Christmas break.

{¶4} The order imposed the following conditions: (1) Father's parenting time must occur in Ohio; (2) Father must stay at his brother's home in Parma Heights during parenting time; (3) if Father leaves his brother's home with the children and travels outside Cuyahoga County, he must notify Mother by phone call or text of the location, departure time, and return time; (4) neither parent may make disparaging remarks about the other in the children's presence; (5) Mother may not schedule appointments – other than weekly counseling – during Father's parenting time; (6) if a counseling session occurs during Father's parenting time, he must transport the child and participate; (7) Father must ensure the children attend any extracurricular activities or sporting events scheduled during his parenting time and Father is not entitled to "make-up" time due to such activities; and (8) Father must administer all prescribed medications during parenting time, and Mother must provide written medication instructions.

{¶5} On August 6, 2024, Father filed a document titled "Complaint for Reallocation." Although labeled as such, the substance of the filing constituted a motion for contempt, alleging Mother refused him parenting time in August of 2024.

{¶6} On February 27, 2025, Father filed a motion to modify parenting time requesting: (1) additional parenting time and (2) modification such that his parenting time could take place at his home in Colorado.

{¶7} On April 1, 2025, the magistrate held a hearing on Father's motions.

*Modifying Parenting Time*

{¶8} Father testified on his motion to modify – stating that he lives in a 1,300 square foot log-sided home in Colorado situated on 15.5 acres. He described the home as "off the grid," explaining it has no traditional electricity. Each child has a bedroom.

{¶9} The home contains a composting toilet, which does not flush and does not use water. It uses peat moss and requires periodic emptying. Water is supplied through rain barrels and is used for showering, washing, and cooking; bottled water is used for drinking. The home is heated with firewood and propane heaters. Solar power, stored in batteries, provides sufficient electricity to operate the home for several days without sunlight.

{¶10} Father testified that there is an urgent care three miles away from his home, and that he has cell phone service at his home. Regarding the children's medications, Father stated he administers them daily during visits, relying on baggies prepared and labeled by Mother. However, Father does not know the names of, or who prescribes, the medications. Father testified that Mother has not provided him with information about the children's doctors or counselors. Father acknowledged, if parenting time occurred in Colorado, weekly counseling would need to be conducted virtually.

{¶11} Father also testified that he did not complete a video walk-through of the home with David Hunter, the guardian ad litem ("GAL"), because Father could not afford

the associated cost. Father stated it would be in the children's best interests to visit Colorado due to the many available activities. On cross-examination, Father expressed confidence that the children will enjoy his Colorado home and that they have no apprehension about visiting him there. Father testified, "they are going to love it. They are going to love it, and they are not going to want to go back to Ohio. And they are going to have to because that's how it's going to be."

{¶12} Several neighbors testified on Father's behalf, describing the home as rustic but clean, with running water and adequate food, and confirming that Father complies with the homeowners' association requirements.

{¶13} Mother testified to her concerns about the children's visits with Father. Mother stated that during Father's June 2024 parenting time, the children missed all counseling appointments – both in-person and virtual – despite her providing advance notice of dates, times, and provider information. She further testified that Father refused to disclose where he was staying with the children and that, while staying at a friend's home instead of his brother's residence, M.R. was bitten by a dog.

{¶14} Mother also testified that, during Father's February 2024 parenting time, neither child took their prescribed medications. She stated this had occurred previously and expressed concern because the children have medical conditions requiring consistent medications.

{¶15} Mother testified she has provided Father with the names of medical providers and counselors. She emphasized that M.R.'s autism requires structure and consistency, and that Father struggles to understand M.R.'s limitations. According to Mother, Father expects M.R. to independently complete tasks beyond her capabilities, and

Father's inability to understand how to care for an autistic child impedes his ability to properly care for M.R.

{¶16} Mother stated the children experience anxiety surrounding visits due to Father's failure to provide schedules or clear information about where they will stay. While she believes Father loves the children and would not intentionally harm them, she lacks confidence in Father's ability to care for the children in his Colorado home that is "off the grid." Mother testified that she encourages the children to talk to Father on the phone, and they talk to him at least every Wednesday.

{¶17} Mother also explained that Father does not understand that the children do not want to visit with him when it jeopardizes their participation in extracurricular activities. For example, Father does not understand that L.R. cannot miss football practice without being benched or removed from the team – an issue specifically regarding Father's second block of summer visitation because the children's extracurricular activities such as football and archery start in August. The same issues do not exist with Father's first block of summer visitation because the school activities have not started yet. Mother testified that she does her best to schedule most of the children's activities around Father's parenting time, but she cannot change things such as football practice. While Mother does not believe the children's activities should come at the expense of Father's parenting time, she does believe Father should prioritize the children's needs and desires to participate in activities over his own love of Colorado.

{¶18} When asked about her specific concerns with Colorado, Mother stated: Father's history of not returning the children on time, Father's history of not properly caring

for the children (i.e., not providing medication), and Father's history of neglecting the children's extracurricular activities.

*Contempt*

{¶19} Father also testified as to his motion for contempt. He stated that when he arrived for his August 2024 visit, Mother would not allow him to take the children. On direct examination, Father was asked: "are you asking this Court to find [Mother] in contempt and give you makeup days for that, whatever is owed on that time?" Father responded, "yes, I am."

{¶20} Mother also testified on the motion for contempt. She stated that when Father arrived for his parenting time in August of 2024, the children did not want to go with him. Mother explained that L.R. is now on the football team. If you miss two practices, you cannot play in the game that week, and if you miss three practices, you are "kicked off" the team. L.R. did not want to go with Father because Father would not drive him to football practice. Mother recorded a video of the children expressing their reluctance to visit Father. Although Mother believed the video was appropriate at the time, she testified she would handle the situation differently today. Mother acknowledged that no court order authorized her to withhold parenting time, but asserted she acted in the children's best interest and offered make-up time.

{¶21} David Hunter has served as Guardian Ad Litem ("GAL") since 2019. He testified that continued unsupervised parenting time in Ohio – under the existing schedule – is in the children's best interests. While the children are bonded with Father, the GAL noted that Father has continually had issues with communication, and the children are

fearful about going to Colorado. The GAL stated the children raised independent concerns – not attributable to Mother - about visitation in Colorado.

{¶22} In the GAL report, admitted as Exhibit A, Hunter opines that the best interests of the children would be met with Father having unsupervised parenting time in Ohio on the same or similar schedule as already in effect.

{¶23} Dr. Winola Sprague ("Dr. Sprague"), the children's therapist since 2022, testified that both children require structure and routine due to their medical conditions. L.R. suffers from anxiety and depression and takes medication. His anxiety related to Father centers on unpredictability and missed extracurricular activities or appointments. M.R. suffers from autism and anxiety. M.R.'s anxiety relates to uncertainty about travel, duration of visits, return timing, and contact with Mother. Dr. Sprague testified that visitation with Father contributes to – but does not solely cause – the children's anxiety. Dr. Sprague found no evidence of parental alienation by Mother.

{¶24} On May 7, 2025, the magistrate issued a decision. As to Father's motion for contempt, the magistrate found Mother's testimony that she encouraged the children to go with Father in August of 2024 to be unsupported by the evidence. The magistrate also found it was not appropriate for Mother to video the children telling Father they did not want to go. The magistrate also noted that, while Mother offered Father makeup time for the missed August visit in 2025, Father never responded to this offer. The magistrate found Mother in contempt for failing in August 2024 to comply with the court's visitation order.

{¶25} As for the contempt sanction, the magistrate sentenced Mother to fifteen days in jail. However, the magistrate found the sentence could be purged if Mother meets

the following conditions: (1) Mother shall ensure the children attend all parenting time as ordered by the trial court on October 2, 2023; (2) Mother shall provide Father with makeup parenting time of two, seven-day periods during summer of 2025. The makeup time may be consecutive to either of Father's two weeks of summer parenting time but shall not occur after the children begin the 2025-2026 school year. Father shall notify Mother - within four (4) weeks of the date this decision is adopted as an order of the court - of the dates he has scheduled for the make-up parenting time; and (3) Mother shall pay Father attorney fees of $500.00.

{¶26} With regard to Father's motion for additional parenting time in Colorado, the magistrate reviewed the parties' testimony, including Father's description of his Colorado home and Mother's concerns about the children visiting the Colorado home. The magistrate concluded that visitation at the Colorado home and expanded visitation in Ohio is not in the best interests of the children. The concerns and findings specifically delineated by the magistrate include: Father's spotty Internet connection makes it questionable as to whether the children will be able to have contact with Mother; Father does not appear to take an interest in the activities the children have chosen to participate in; Father is fixated on Colorado in conversations with the children; the children become distressed when they have to miss activities they are interested in because Father does not view them as important; Father has not attended any of the children's extracurricular activities such as football practices or football games; Father does not check in with the children's doctors or counselors; and the children have diagnoses that require continuing treatment, and Father has been inconsistent with ensuring that the children attend doctor's and counseling appointments. The magistrate conducted an in-camera interview with the

children and stated she considered the wishes of the children in her decision. The magistrate also specifically stated that, in determining the best interest of the children as determined by the factors contained in R.C. 3109.04, she considered the testimony of the parties and the exhibits, weighed the credibility of the witnesses, and considered all matters of record, including the recommendation of the GAL. The magistrate concluded it was in the children's best interests to maintain the existing October 2023 parenting order.

{¶27} On May 13, 2025, Father filed a request for findings of fact and conclusions of law. The magistrate denied the request - stating the May 7 decision already contained them.

{¶28} On May 21, 2025, Father filed objections to the magistrate's decision, arguing: (1) the magistrate failed to issue findings of fact and conclusions of law; (2) the contempt sanction was insufficient; (3) Mother's testimony was not credible; and (4) the characterization of his home as "off the grid" was incorrect. On July 21, 2025, Father filed supplemental objections, reiterating the objections contained in his initial objections.

{¶29} On August 13, 2025, the trial court issued a judgment entry, in which the court characterized Father's objections as follows: (1) the magistrate failed to issue findings of fact and conclusions of law; (2) the "makeup time" ordered by the magistrate as a purge condition on Father's contempt motion was insufficient; and (3) the magistrate erred in not granting Father's motion to modify parenting time. The trial court stated it reviewed the magistrate's decision and all matters of record and undertook an independent review of the matters. The trial court concluded that the magistrate properly determined the factual issues and appropriately applied the law. Accordingly, the trial court overruled

Father's objections to the magistrate's decision, and adopted the May 7, 2025, magistrate's decision as an order of the court.

{¶30} Father appeals the August 13, 2025, judgment entry of the Ashland County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶31} "I. THE TRIAL COURT'S REFUSAL TO REQUIRE FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON TIMELY REQUEST BY THE DEFENDANT-APPELLANT DEPRIVES HIM OF HIS LEGAL RIGHTS AND REQUIRES REVERSAL OF THE JUDGMENT BELOW."

{¶32} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ADOPTING THE MAGISTRATE'S DECISION FILED MAY 7, 2025, AS THE JUDGMENT PURPORTEDLY ADOPTING THE MAGISTRATE'S DECISION IS ARBITRARY, UNREASONABLE, AND UNCONSCIONABLE AND NOT BASED UPON THE FACTS AND EVIDENCE AT HEARING NOR APPLICABLE LAW SUCH TO REQUIRE A DE NOVO REVIEW BY THIS COURT AND REVERSAL OF THE TRIAL COURT'S JUDGMENT."

I.

{¶33} In his first assignment of error, Father contends the trial court's refusal to require the magistrate to issue findings of fact and conclusions of law was in error. We disagree.

{¶34} The first question we must address is whether the magistrate was required to issue findings of fact and conclusions of law. Father's objections fall into two categories: objections related to his contempt motion, and objections related to his motion to modify visitation.

{¶35} Father cites Civil Rule 52 in support of his argument. Civil Rule 52 provides, in pertinent part:

When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the findings of fact found separately from the conclusions of law.

. . .

Findings of fact and conclusions of law required by this rule and by Civ.R. 41(B)(2) and Civ.R. 23(G)(3) are unnecessary upon all other motions including those pursuant to Civ.R. 12, Civ.R. 55 [Default], and Civ.R. 56 [Summary Judgment].

{¶36} Father contends he made a timely request pursuant to Civil Rule 52 and that the requirements of Civil Rule 52 are mandatory.

*Contempt Motion*

{¶37} This Court, following the directive of the Supreme Court of Ohio, has held, "findings of fact and conclusions of law under Civ.R. 52 are unnecessary in regard to motions for contempt." *Yarchak v. Yarchak*, 2007-Ohio-2619, ¶ 23 (5th Dist.), citing *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11-12 (1981); *Breen v. Breen*, 1999 Ohio App. LEXIS 6285, at *6 (5th Dist. Dec. 20, 1999).

**{¶38}** Accordingly, the magistrate was not required to issue findings of fact and conclusions of law as to the contempt motion and the sanctions imposed for the contempt. Thus, the trial court did not commit error in denying Father's objection as it relates to findings of fact and conclusions of law on the motion for contempt.

*Motion to Modify Visitation*

**{¶39}** Unlike the contempt proceeding, the magistrate was required to issue findings of fact and conclusions of law on her decision on the denial of the motion to modify visitation.

**{¶40}** Father argues that the findings of fact and conclusions of law were improper under Civil Rule 52, therefore rendering the entire magistrate's decision void. The magistrate denied Father's motion for findings of fact and conclusions of law, stating that her written decision contained findings of fact and conclusions of law.

**{¶41}** The purpose of separately stated findings of fact and conclusions of law is to enable a reviewing court to determine the existence of assigned error. *In re Adoption of Gibson*, 23 Ohio St.3d 170, 172 (1986); *Davis v. Wilkerson*, 29 Ohio App.3d 100, 101 (9th Dist. 1986). If the trial court's ruling or opinion, in conjunction with other parts of the record, provides an adequate basis upon which a reviewing court can decide the legal issues presented, there is substantial compliance with Civil Rule 52. *Stone v. Davis*, 66 Ohio St.2d 74, 84-85 (1981); *Hamilton Brownfields Redevelopment, LLC v. Duro Tire & Wheel*, 2004-Ohio-1365, ¶ 12 (12th Dist.).

**{¶42}** A trial court is not obligated to grant a Civil Rule 52 request if the judgment challenged already states sufficient findings of fact and conclusions of law. *Kelly v. Northeastern Ohio Univ. College*, 2008-Ohio-4893, ¶ 33 (10th Dist.). "[I]t is for the courts

to determine whether findings and conclusions should have been provided upon a timely request or whether the trial court already issued an order which substantially complied with its obligation." *Shrock v. Mullet*, 2019-Ohio-2707, ¶ 59 (7th Dist.). "The test for determining whether a trial court's opinion satisfies the requirements of Civ.R. 52 is whether the contents of the opinion, when considered together with the other parts of the record, form an adequate basis upon which to decide the narrow legal issues presented." *State ex rel. Gilbert v. City of Cincinnati*, 2010-Ohio-1473, ¶ 38.

{¶43} Father contends the magistrate's decision merely restated the testimony in the case and did not contain findings to support the denial of his motion to modify. We disagree. While the magistrate included the testimony of various witnesses in her entry, she also sufficiently set forth the basis for her ruling. As detailed below, the legal question underlying a motion to modify visitation is what is in the best interest of the children. The magistrate specifically cited R.C. 3109.04 and discussed whether the best interest factors weighed in favor or against modification of visitation. Thus, she issued sufficient "conclusions of law" to substantially comply with Civil Rule 52.

{¶44} Similarly, the magistrate also issued sufficient findings of fact. The findings of fact regarding the "best interest" determination include: the GAL recommended the visitation remain the same; the children's wishes were conveyed to the magistrate via an in-camera interview; there is concern with the Colorado home because it has only spotty internet; Father would not provide the GAL with a video tour of the home; Father does not take an interest in the children's activities; Father is fixated on Colorado in conversations with the children; the children are distressed when they have to miss activities they are interested in because Father does not see them as important; Father has not attended any

of the children's activities; Father does not check in with the children's counselors or doctors; the children have diagnoses that require continuing treatment; and Father is inconsistent with ensuring the children continue with medication and appointments.

{¶45} As to Father's argument that the magistrate was required to utilize the headings "Findings of Fact" and "Conclusions of Law" in her decision, "there is no requirement that a magical heading of 'findings of fact and conclusions of law' are required . . .". *Kane v. City Council of Youngstown*, 1999 Ohio App. LEXIS 5816, * 18 (7th Dist. Dec. 2, 1999).

{¶46} We find the magistrate's findings of fact and conclusions of law are sufficient to explain the factual basis and rationale for her ruling and allow a meaningful review. *Smith v. Quigg*, 2006-Ohio-1494, ¶ 29 (5th Dist.). Accordingly, the trial court did not commit error in failing to sustain Father's objection with regards to the alleged lack of findings of fact and conclusions of law.

{¶47} Father's first assignment of error is overruled.

II.

{¶48} In his second assignment of error, Father contends the trial court committed error in overruling his objections to the magistrate's decision with regards to the contempt sanction and his motion to modify visitation. We disagree.

*Contempt Sanction*

{¶49} A civil contempt sanction is reviewed for an abuse of discretion. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11 (1981); *Myer v. Myer*, 2009-Ohio-6884, ¶ 19 (5th Dist.). "An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶50} Father contends that after the magistrate found Mother in contempt for failing to permit the children to attend Father's visit in August of 2024, the magistrate failed to issue an appropriate contempt sanction, and that the trial court abused its discretion in overruling Father's objection to the contempt sanction. Appropriate sanctions in a civil contempt are sanctions that: (1) coerce compliance with the court's previous order; or (2) compensate the complainant for losses sustained by the contemnor's disobedience of the order. *ITS Fin., LLC v. Gebre*, 2014-Ohio-2205, ¶ 37 (2nd Dist.).

{¶51} We find no abuse of discretion in the trial court's overruling of Father's objection regarding the contempt sanction. Father was appropriately compensated for the losses he sustained, i.e., the loss of visitation time and the loss of funds from having to file the contempt motion. Additionally, the magistrate imposed Father's requested sanction. To be sure, on direct examination, Father was asked "are you asking this Court to find [Mother] in contempt and give you makeup days for that, whatever is owed on that time." Father responded, "yes, I am."

{¶52} Father additionally argues that because the trial court mistakenly stated the magistrate found "Defendant" was in contempt, rather than "Plaintiff" was in contempt (for failing to take the children to the August 2024 visit with Father), the entirety of the trial court's decision is invalid and unsupported by competent and credible evidence. We disagree.

{¶53} The magistrate's decision did not find Father in contempt. Likewise, the parties agree that the magistrate did not find Father in contempt; rather, the magistrate found Mother in contempt. The trial court fully adopted the magistrate's May 7, 2025, decision as an order of the court. The trial court referenced the correctly dated

magistrate's decision finding Mother in contempt and approved and adopted it in its entirety. Thus, the use of the word "Defendant" instead of "Plaintiff" was a scrivener's error that does not affect the outcome of this appeal, and this error is of no legal significance to the issues raised, as Father's objections focused on the contempt sanction against Mother and the denial of his motion to modify visitation to Colorado. *State v. Edwards*, 2023-Ohio-3740, ¶ 12, fn. 1 (5th Dist.); *Trammell v. Broner*, 2023-Ohio-4143, ¶ 2, fn. 1 (5th Dist.); *State v. Davis*, 2017-Ohio-7572, ¶ 21, fn. 4 (5th Dist.).

*Motion to Modify Visitation*

{¶54} The decision to modify parenting time, which is also referred to as visitation, is within the sound discretion of the trial court. *Booth v. Booth*, 44 Ohio St.3d 142 (1989); *Braatz v. Braatz*, 85 Ohio St.3d 40, 45 (1999). An abuse of discretion implies the court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Additionally, an appellate court will defer to a trial court's factual resolutions of conflicting opinions and testimony, as the trial court is in the best position to observe the witnesses' voice inflections, demeanor, and gestures, and to assess credibility. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶55} When ruling on a motion to modify visitation, the trial court looks to the factors enumerated in R.C. 3109.051(D) or R.C. 3109.04 to determine if modification of visitation is in the best interest of the children. *Braatz*, 85 Ohio St.3d at 40. These factors include: the prior interaction and interrelationships of the child with the child's parents and siblings; the geographical location of the residence of each parent and the distance between them; the child's and parents' available time for visitation (including the child's

school schedule); the age of the child; the child's adjustment to home, school, and community; any wishes and concerns the child expressed to the court; the health and safety of the child; the amount of time available for the child to spend with siblings; the mental and physical health of all parties; each parent's willingness to reschedule and accommodate the other parent's parenting time; whether a parent has willfully and continually denied parenting time rights; whether either parent has established a residence outside the state; and any other factor in the best interest of the child. The best interest determination focuses on the child, not the parent. *In re C.T.*, 2020-Ohio-4965 (5th Dist.).

{¶56} Father contends the trial court's overruling of his objections regarding his motion to modify visitation to Colorado is an abuse of discretion because the magistrate "disregarded" Father's testimony, because Mother "alienated" the children, because the magistrate found his home "appropriate" for the children, and because it would have been "more reasonable" for the magistrate to conclude that there were no issues to preclude Father from taking the children out of state.

{¶57} The magistrate specifically stated she considered and weighed the best interest factors contained in reaching her decision. The magistrate did not find any parental alienation by Mother, and this finding is supported by the testimony of Dr. Sprague. Simply because the magistrate found that Father's home was "appropriate" for the children does not mean the magistrate must also find that allowing Father's visits to take place in Colorado is in the best interests of the children. Father focuses on one factor in the best interest determination. However, no one factor is dispositive of the children's best interests, and the court has discretion to weigh the factors as it sees fit. *B.S. v. M.M.*, 2021-Ohio-176, ¶ 42 (5th Dist.); *Day v. Day*, 2023-Ohio-2428, ¶ 44 (5th Dist.). The trial

court is not required to separately address each best interest factor. *Baker-Chaney v. Chaney*, 2017-Ohio-5548 (5th Dist.).

{¶58} Likewise, there is competent and credible evidence to support the magistrate's determination that there were issues that precluded Father from taking the children out of state. Mother testified that Father has failed to give the children medication during visits and that he does not understand how important structure and scheduling is for a child with autism. Mother described how L.R. is on the football team and cannot miss practices without his spot on the team being in jeopardy. Despite telling Father about this, Father believes taking L.R. to Colorado is more important that L.R.'s football practices. Dr. Sprague confirmed the children have medical diagnoses that are best managed by having structure and routine. As to L.R., his anxiety with regard to visitation with Father stems from not knowing when he is coming or going and not knowing if Father is going to take him to counseling appointments or extracurricular activities. With regard to M.R., her anxiety toward visitation with Father centers around where she is going to stay, how she is going to get there, and whether she can have contact with Mother while she is there.

{¶59} The GAL testified that while Father is bonded to the children, Father has continually had issues with communication, scheduling, and while some of the children's concerns about Colorado are the same as Mother's concerns, both children expressed different concerns to him other than what Mother reported. The GAL opined it is in the best interests of the children for visitation with Father to remain status quo, in Ohio. Father's fixation on Colorado at the expense of the children's interests and activities is demonstrated by his own testimony that once the children come to Colorado, they are "not going to want to go back to Ohio," and "that's how it's going to be."

{¶60} While Father presented conflicting testimony, as an appellate court reviewing evidence in custody and visitation matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. *Dinger v. Dinger*, 2001-Ohio-1386 (5th Dist). The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967). The fact finder is free to believe all, some or, none of the testimony. *Hawbecker v. Hawbecker*, 2016-Ohio-5740, ¶ 31 (5th Dist.). This is because the trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶61} This Court's role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 2001-Ohio-1386 (5th Dist.). Here, because there is competent and credible evidence to support the magistrate's decision that it is in the best interests of children for the visitation to remain status quo, the trial court did not abuse its discretion in overruling Father's objections to the magistrate's decision regarding visitation.

{¶62} Father argues that, because Mother inappropriately videotaped the children explaining why they did not want to go with Father, this sole violation should result in a modification of Father's parenting time to Colorado. Mother was found in contempt for failing to produce the children for parenting time in August of 2024. The magistrate specifically stated she did not consider the wishes of the children - as expressed in the video. Again, Father focuses on one factor that may be taken into consideration in a best

interest determination. As detailed above, no one factor is dispositive of the children's best interests. *Day v. Day*, 2023-Ohio-2428, ¶ 44 (5th Dist.).

{¶63} Father additionally argues that the magistrate and trial court inappropriately considered what occurred during Father's visits prior to the filing of his motion. However, R.C. 3109.051 and R.C. 3109.04 provide that one factor to consider when determining the best interest of the children is "the prior interaction and interrelationships of the child with the child's parents . . .". Accordingly, neither the magistrate nor the trial court abused their discretion in considering this testimony.

{¶64} Father contends the magistrate should not have considered the wishes of the children, as obtained during the in-camera interview of the children, without making specific findings of fact - developed from the in-camera interview - in her judgment entry. However, this Court has "interpreted sections (B)(2)(c) and (3) of R.C. 3109.04 to mean in-camera interviews are to remain confidential." *Lawson v. Lawson*, 2013-Ohio-4687, ¶ 53 (5th Dist.). In-camera interviews with children are confidential and not to be disclosed to the parents. *Facemyer v. Facemyer*, 2025-Ohio-205, ¶ 34 (7th Dist.).

{¶65} We find there is competent and credible evidence to support the magistrate's best interest determination. Likewise, we find the magistrate did not abuse her discretion in her contempt sanction. Accordingly, the trial court did not commit error in overruling Father's objections to the magistrate's decision. Father's second assignment of error is overruled.

{¶66} Based on the foregoing, Father's assignments of error are overruled.

For the reasons stated in our Opinion, the judgment of the Ashland County Court of Common Pleas Domestic Relations Division, is affirmed.

Costs to Appellant John G. Ricksecker.

By: Popham, J.

King, P.J. and

Hoffman, J., concur